**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

EASTER UNLIMITED, INC. d/b/a FUN
WORLD,

                    Plaintiff,

             -against-

TERRY ROZIER,

                  Defendant.

Docket No. 2:18-cv-06637-RRM-ARL

Hon. Roslynn R. Mauskopf

---

### MEMORANDUM OF LAW IN OPPOSITION TO
### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

Respectfully submitted,

**BARSHAY SANDERS, PLLC**
*Attorneys for Plaintiff*

By:    Jonathan M. Cader, Esq.
        Craig B. Sanders, Esq.
        100 Garden City Plaza, Suite 500
        Garden City, New York 11530
        Tel: (516) 203-7600
        Fax: (516) 706-5055
        *jcader@barshaysanders.com*
        *csanders@barshaysanders.com*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................. 1

SUMMARY OF THE CASE....................................................................................................... 3

STATEMENT OF FACTS .......................................................................................................... 4

ARGUMENT ............................................................................................................................... 8

  I.   STANDARD OF REVIEW ............................................................................................. 9

  II.  DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT ON
      PLAINTIFF'S COPYRIGHT INFRINGEMENT CLAIMS ............................................ 11

    A.  Defendant's Challenge to Plaintiff's Copyright Ownership is Legally Deficient ........ 12

    B.  Defendant's Challenge to Plaintiff's Copyright Ownership is Time Barred ................ 13

    C.  Defendant's Challenge to Plaintiff's Copyright Ownership Creates a Question
       of Fact Requiring Denial of the Motion ......................................................................... 14

  III.  DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT ON HIS
       "FAIR USE" DEFENSE ................................................................................................. 15

    A.  The First Fair Use Factor – Purpose and Character of the Use - Does Not Favor
       Defendant ......................................................................................................................... 17

    B.  The Second Fair Use Factor – Nature of the Copyright Work - Does Not Favor
       Defendant ......................................................................................................................... 19

    C.  The Third Fair Use Factor - Amount and Substantiality of the Portion Used -
       Does not Favor Defendant ............................................................................................... 20

    D.  The Fourth Fair Use Factor – Effect of the Use - Cannot be Determined on this
       Motion ............................................................................................................................. 21

  IV.  DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT ON
       PLAINTIFF'S TRADEMARK INFRINGEMENT CLAIMS......................................... 22

CONCLUSION.......................................................................................................................... 25

# **TABLE OF AUTHORITIES**

**Cases**

*Am. Geophysical Union v. Texaco Inc.*,
    60 F.3d 913 (2d Cir. 1994) ......................................................................................... 17

*Abercrombie & Fitch Co. v. Hunting World, Inc.*,
    537 F.2d 4, 9–11 (2d Cir. 1976) ................................................................................. 22

*American Ort, Inc. v. Israel*,
    No. 07 Civ. 2332(KMK), 2007 WL 2049733, at *4 (S.D.N.Y. July, 17, 2007) ..................... 21

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ...................................... 9

*Authors Guild v. Google, Inc.*,
    804 F.3d 202 (2d Cir. 2015) ...................................................................................... 16

*Authors Guild v. Google, Inc.*,
    804 F.3d 202, 223 (2d Cir. 2015) ............................................................................. 20

*Baldwin v. EMI Feist Catalog, Inc.*,
    805 F.3d 18, 25 (2d Cir. 2015) .................................................................................... 9

*Balsley v. LFP, Inc.*,
    691 F.3d 747, 760 (6th Cir. 2012) ............................................................................ 19

*Bill Graham Archives v. Dorling Kindersley Ltd.*,
    448 F.3d 605, 613 (2d Cir. 2006) ............................................................................. 20

*Brown v. Eli Lilly & Co.*,
    654 F.3d 347, 358 (2d Cir. 2011) ............................................................................... 9

*Campbell v. Acuff-Rose Music*, Inc.,
    510 U.S. 569, 590, 114 S.Ct. 1164, 1177, 127 L.Ed. 2d 500 (1994) ............... 15, 17, 18, 19

*Celotex Corp. v. Catrett*,
    477 U.S. 317, 322-25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ................................ 9

*Chambers v. TRM Copy Ctrs. Corp.*,
    43 F.3d 29 (2d Cir. 1994) ......................................................................................... 10

*CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP*,
    735 F.3d 114, 123 (2d Cir. 2013) ............................................................................... 9

*Design Strategy, Inc. v. Davis,*
469 F.3d 284, 297 (2d Cir. 2006) ................................................................. 12

*Dewan v. Blue Man Group Ltd. P'ship,*
73 F.Supp.2d 382 (S.D.N.Y. 1999) ............................................................. 13

*EMI Music Mktg. v. Avatar Records, Inc.,*
334 F. Supp. 2d 442, 445 (S.D.N.Y. 2004) ............................................... 11

*Estate of Smith v. Graham,*
799 F. App'x 36 (2d Cir. 2020) ................................................................... 15

*Fonar Corp. v. Domenick,*
105 F.3d 99 (2d Cir. 1997) ......................................................................... 14

*Galvin v. Illinois Republican Party,*
130 F. Supp. 3d 1187, 1195 (N.D. Ill. 2015) ............................................. 20

*Glatt v. Fox Searchlight Pictures, Inc.,*
811 F.3d 528, 533 (2d Cir. 2016) ................................................................. 9

*Gruner + Jahr USA Pub. v. Meredith Corp.,*
991 F.2d 1072, 1076 (2d Cir. 1993) ........................................................... 22

*Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.,*
331 F.Supp.3d 221 (S.D.N.Y. 2018) ......................................................... 10

*Harper & Row Publishers, Inc. v. Nation Enterprises,*
471 U.S. 539, 560-61, 105 S.Ct. 2218, 2230-31, 85 L.Ed. 2d 588 (1985) ................. 15, 16, 20

*Holcomb v. Iona Coll.,*
521 F.3d 130 (2d Cir. 2008) ......................................................................... 9

*Infinity Broad. Corp.,*
150 F.3d 104, 109 (2nd Cir. 1998) ............................................................. 19

*James v. New York Racing Ass'n,*
233 F.3d 149, 157 (2d Cir. 2000) ................................................................. 9

*Jeffreys v. City of New York,*
426 F.3d 549 (2d Cir. 2005) ....................................................................... 10

*Johnson v. Killian,*
680 F.3d 234 (2d Cir. 2012) ......................................................................... 9

*Kaytor v. Elec. Boat Corp.,*
609 F.3d 537 (2d Cir. 2010) ....................................................................... 14

*Kelly v. Arriba Soft Corp.*,
  336 F.3d 811, 820 (9th Cir. 2003)..................................................................................... 19

*Lane Capital Management, Inc. v. Lane Capital Management, Inc.*,
  192 F.3d 337, 345 (2d Cir. 1999)..................................................................................... 21

*Lemme v. Nat'l Broad. Co., Inc.*,
  472 F.Supp.2d 433, 443 (E.D.N.Y. 2007) ....................................................................... 21

*Lennon v. Premise Media Corp.*,
  556 F. Supp. 2d 310, 325 (S.D.N.Y. 2008)....................................................................... 18

*Lennon v. Seaman*,
  84 F.Supp.2d 522 (S.D.N.Y. 2000)................................................................................... 14

*Lucente v. Int'l Bus. Machs. Corp.*,
   310 F.3d 243 (2d Cir. 2002)............................................................................................. 10

*Margo v. Weiss*,
  No. 96 Civ. 3842(MBM), 1998 WL 2558, at *9 (S.D.N.Y. Jan. 5, 1998)........................ 13

*Merchant v. Levy*,
  92 F.3d 51, 56 (2d Cir. 1996)........................................................................................... 13

*Merriam-Webster, Inc. v. Random H., Inc.*,
  35 F.3d 65, 72 (2d Cir. 1994)........................................................................................... 23

*Morales v. Quintel Entm't, Inc.*,
  249 F.3d 115 (2d Cir. 2001)............................................................................................. 10

*Nora Beverages, Inc. v. Perrier Group of Am., Inc.*,
  269 F.3d 114, 119 (2d Cir. 2001)..................................................................................... 22

*Paddington Corp. v. Attiki Imps. & Dists., Inc.*,
  996 F.2d 577, 586 (2d Cir. 1993)..................................................................................... 23

*Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*,
  469 U.S. 189, 194–95, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985) ................................. 22

*Polaroid Corp. v. Polarad Electronics Corp.*,
  287 F.2d 492 (2d Cir. 1961)............................................................................................. 22

*Santa–Rosa v. Combo Records*,
  471 F.3d 224 (1st Cir. 2006) ........................................................................................... 13

*Schwabenbauer v. Bd. of Educ.*, 667 F.2d 305 (2d Cir. 1981) ..................................... 10

*Sony Corp. of America v. Universal City Studios*,
  464 U.S. 417, 451, 104 S.Ct. 774, 792 & n. 31, 78 L.Ed.2d 574 (1984)................................ 17

*Star Industries, Inc. v. Bacardi & Co. Ltd.*,
   412 F.3d 373, 384–85 (2d Cir. 2005)................................................................ 22, 23

*Stix Prods., Inc. v. United Merchants and Mfrs., Inc.*,
   295 F.Supp. 479, 488 (S.D.N.Y. 1968) ................................................................ 22

*TCPIP Holding Co. v. Haar Communications, Inc.*,
   244 F.3d 88, 93 (2d Cir. 2001) .......................................................................... 22

*Terry v. Ashcroft*,
   336 F.3d 128 (2d Cir. 2003) .............................................................................. 10

*Time, Inc. v. Petersen Publ'g Co.*,
   173 F.3d 113, 118 (2d Cir. 1999) ...................................................................... 22

*Weber v. Geffen Records, Inc.*,
   63 F. Supp. 2d 458 (S.D.N.Y. 1999) .................................................................. 13

*Yurman Design Inc. v. Chaindom Enterprises, Inc.*,
   No. 99 CIV. 9307 (JFK), 2003 WL 22047846 (S.D.N.Y. Aug. 29, 2003) ............................. 14

**Statutes**

17 U.S.C.
   § 107 ...................................................................................................... 16
   § 410(c) .................................................................................................. 15
   § 507(b) .................................................................................................. 13

Fed. R. Civ. Pro.
   Rule 26(a)(1) ...................................................................................... 1, 11, 12
   Rule 26(a)(2)(A) .......................................................................................... 12
   Rule 37(c)(1) ............................................................................................. 12
   Rule 56 ................................................................................................. 1, 4

Fed. R. Evid.
   703(a) .................................................................................................... 12

**Other Authorities**

2 Howard B. Abrams, *The Law of Copyright* § 15:52 (2006) ...................................... 19

Plaintiff, Easter Unlimited, Inc. d/b/a Fun World ("*Plaintiff*"), by and through its undersigned attorneys, hereby submits the instant Memorandum of Law in opposition to the motion of Defendant, Terry Rozier ("*Defendant*"), for summary judgment pursuant to Fed. R. Civ. Pro. 56.

## PRELIMINARY STATEMENT

Defendant's motion for summary judgment must be denied for a myriad of reasons.  By way of example, and without limitation, the motion rests almost entirely on the testimony of Tony Gardner, a witness who was not disclosed in Defendant's Rule 26(a) disclosures (to the extent any such disclosures were served[1]).  Further, it is unclear if the testimony of this person is being offered as that of an expert or that of a lay-witness.  Gardner was not identified as an expert witness and proffered no report for Plaintiff's consideration prior to the filing of the instant motion. Indeed, Defendant's concealment of Gardner continued up until the filing of Defendant's request for leave to file the instant motion, in which Gardner's name appears nowhere.  *See Dkt. No.* 41. For the above reasons, the Court should decline to entertain the Gardner declaration on the grounds that allowing same would permit Defendant to conduct a trial by ambush—a tactic expressly rebuked by the Court and the Federal Rules.

In the event that the Court were to consider the Gardner declaration –which it should not– it would present an even greater problem for Defendant.  More specifically, Defendant offers the Gardner declaration for the purpose of arguing that Plaintiff is purportedly not the owner of the copyrights for which it holds valid certificates of registration. This argument must fail insofar as

---

[1]     As is set forth more fully in the accompanying Declaration of Craig B. Sanders, a diligent search of the undersigned Firm's records shows no evidence that a Rule 26 disclosure was ever served by Defendant—either in paper or electronic form.

1

Plaintiff holds valid certificates of registration and Gardner offers nothing but conjecture to the contrary.

Pursuant to 17 U.S.C. § 410(c), a certificate of registration of a copyright constitutes *prima facie* evidence of the validity of the copyright and of the facts stated in the certificate in any judicial proceedings.  Accordingly, Defendant's proffer, should same be accepted by this Court, serves only to <u>create</u> a question of material fact, not eliminate it.  Insofar as a party is only entitled to summary judgment where there are no material facts in dispute, the Court should be as perplexed as Plaintiff in wondering why Defendant's learned counsel would proffer an affirmative request for relief which could not possibly be granted.

Setting aside than the aforementioned violations of Rule 26, had this brief been filed as opposition to Plaintiff's competing motion for summary judgment, the Court's incredulity may be lessened but, critically, would not be eliminated.  However, it is beyond cavil that by attempting to call into question Plaintiff's ownership of the rights claimed in the complaint and Plaintiff's affidavits submitted in support of Plaintiff's competing motion for summary judgment, Defendant would have created a material issue of fact preventing the granting of this motion.

Under these circumstances, the Court must consider whether the filing of this motion borders on the sanctionable—or whether it crosses that line.  By presenting the instant motion to the Court, counsel is necessarily representing that there is a good faith basis under Rule 11 to grant affirmative relief to Defendant.  Because Defendant's moving brief operates to create a question of fact, there are no circumstances under which affirmative relief could be granted to Defendant, even if the motion were not opposed.  As a result, the Court would be justified in considering whether the filing of the instant motion by Defendant is frivolous.

2

## SUMMARY OF THE CASE

This action seeks to recover for copyright infringement and trademark infringement.

Plaintiff is a designer, manufacturer and supplier of original costumes and masks, holiday items and novelty gifts, most—if not all of which—are covered by valid copyright and trademark registrations.  The product at issue in this case is Plaintiff's Ghost Face® mask, which rose to proverbial fame when Plaintiff licensed it to Dimension Films in 1996 for use as the face of the otherwise faceless killer in the Scream trilogy of horror films (it has since been licensed for use in the Scream sequels, as well as in other movies, televisions shows, and other productions).

Defendant is a professional basketball player who was drafted by the Boston Celtics in the 2015 draft, and continues to play in the National Basketball Association (the "*NBA*").  Defendant is a self-professed fan and devotee of the Scream movies and, in or about 2018, came to be known as "Scary Terry," following several impressive performances at the end of the 2018 NBA season.  Defendant's rise to fame was serendipitous, and would not have occurred but for injuries which sidelined nearly every other star player on the 2018 Celtics team.

Having failed to develop a brand for himself when attempting to give himself his own nickname, Defendant admittedly sought to capitalize on the happenstance fame then before him.  To this end, Defendant decided that "Scary Terry" needed an identity other than himself, and sought to market a line of clothing exploiting that persona.  When Defendant's marketing team presented him with an image of "Scary Terry" wearing a hockey mask (such as that worn by the killer in the Friday the 13th movies, Defendant rejected the proposal and was repeatedly quoted as saying "we need to get Scream on there."  The fact that Defendant unequivocally and repeatedly insisted on using "Scream" (read: Ghost Face®) belies any contention in his motion that the intrusion on Plaintiff's intellectual property was accidental.

Plaintiff commenced this action upon its discovery that Defendant had begun selling a line of clothing, such as t-shirts and "hoodies," featuring himself wearing Plaintiff's Ghost Face® mask above the words "Scary Terry."  Plaintiff did not authorize Defendant to use Ghost Face® for any purpose, and Plaintiff otherwise has the trademark rights to license the use of Ghost Face® for items such as clothing and other apparel.  Defendant did not seek license or permission from Plaintiff to use Ghost Face® prior to authorizing his "team" to create, market and sell the offending products.  Had Defendant approached Plaintiff prior to creating "Scary Terry" to emulate Ghost Face®, Plaintiff would not have authorized such use. Insofar as Defendant readily admits that he wanted Ghost Face® to be the proverbial face of "Scary Terry," his purported reasons therefor are irrelevant.  Instead, the singularly dispositive fact is that Defendant intended to use Ghost Face®, when he knew it was not his to use.

## STATEMENT OF FACTS

The facts of this case are taken from Plaintiff's response to Defendant's Statement of Undisputed Material Facts (the "*RSUF*") and the Declaration of Alan Geller (the "*Geller Decl.*") submitted in connection therewith.  At the outset of this section, Plaintiff would be remiss if it did not note that Defendant's Rule 56.1 Statement, captioned one as being a "Statement of Material Facts not Genuinely in Dispute," is actually a misnomer.  That is because the Statement serves to contest one of the most relevant facts in this case—that being whether Plaintiff is the owner of the copyright and trademark rights for which it holds valid registrations.  As will be explained in the argument below, Defendant's motion should be denied for this reason alone.  The foregoing aside, the facts relevant to the instant motion are summarized below.

Plaintiff is a designer, manufacturer and supplier of original costumes and masks, holiday items and novelty gifts, and designs, manufactures and markets products for Halloween, Easter,

Valentine's, St. Patrick's, Christmas and patriotic occasions. *RSUF* at ¶ 41. Plaintiff is the legal and rightful owner of valuable intellectual property, including designs of original costumes, masks, holiday items and novelty gifts. *RSUF* at ¶ 42. Relevant to this case, Plaintiff is the original designer of the "Ghost Face®" mask, for which copyright registrations were granted in 1993 and 1999. *RSUF* at ¶ 43; *Dkt. No.* 14-1. Plaintiff similarly obtained a trademark registration for the image of Ghost Face® in, *inter alia,* 2012. *RSUF* at ¶ 43; *Dkt. No.* 14-2.

In or about 1996, Plaintiff licensed its Ghost Face® mask to Dimension Films for use in <u>Scream</u> and, subsequently, for six additional motion pictures, including the <u>Scream</u> sequels, <u>Scary Movie</u>, and <u>Jay and Silent Bob Strike Back</u>. *RSUF* at ¶ 44. Although Ghost Face® became widely popularized as a result of it being featured in the <u>Scream</u> movies, because Plaintiff has aggressively policed its intellectual property rights and marketing of its products, in the twenty four (24) years since the release of the initial movie, Ghost Face® is known throughout the world known by its trademark as being property owned by Plaintiff. *RSUF* at ¶ 45.

Defendant is a professional basketball player, who currently plays for the Charlotte Hornets in the National Basketball Association ("NBA") (*RSUF* at ¶ 1) and is a self-professed fan of the <u>Scream</u> movies. *RSUF* at ¶ 10 (Defendant has been oft-quoted as saying "I love scary movies [and] Scream is my favorite"). Defendant started his NBA career with the Boston Celtics organization, who drafted him in the first round of the 2015 NBA draft. *RSUF* at ¶ 2. Defendant's initial career was unremarkable and did not take off until his third season with the Celtics, when he was called upon to fill in for the Celtics' star point guard, Kyrie Irving, who was sidelined due to injury. *RSUF* at ¶ 3. Following several impressive performances, Celtics fans and members of the sports media began calling Defendant "Scary Terry." *RSUF* at ¶ 5.

Once the "Scary Terry" nickname took off, Defendant decided to capitalize on his emerging celebrity by creating a line of t-shirts and hoodies to celebrate the "Scary Terry" persona. *RSUF* at ¶ 7.[2]  At the time Defendant sought to capitalize on this happenstance, however, there was no face of "Scary Terry" other than Defendant himself.  To make the persona of "Scary Terry" appear "scary," Defendant determined that "Scary Terry" should be portrayed in the image of a serial killer, in keeping with what Defendant describes as the purported "common practice" of referring to professional athletes—especially hot-shooting point guards—as remorseless "killers." *RSUF* at ¶ 9.

To bring Defendant's narcissistic vision to life, his marketing team created a shirt which depicted Defendant wearing a hockey mask like the Jason character in the Friday the 13th movies. *RSUF* at ¶ 12.  Defendant rejected that proffer, repeatedly saying that "***We need to get the Scream mask on there***".  *RSUF* at ¶¶ 12-16[3] (emphasis added).  Staying true to his word, Defendant had around 500 "Scary Terry" shirts and hoodies made, featuring himself wearing Plaintiff's Ghost Face® mask.  *RSUF* at ¶ 20.  Defendant's "Scary Terry" products are substantially similar to products for which Plaintiff would require a license, to the extent that they utilized the entirety of Plaintiff's trademarked Ghost Face® image.  *Declaration of Alan Geller* at ¶¶ 66, 71.

Defendant's role in the Celtics' surprise playoff run led to a surge in popularity for the "Scary Terry" persona and, seeing an opportunity to further enrich himself at Plaintiff's expense, Defendant authorized his team to create more "Scary Terry" apparel made.  *RSUF* at ¶¶ 23-24.  To increase distribution, Defendant and his team authorized Barstool Sports, I Love Boston Sports,

---

[2]     Apparently, the prospect of Defendant profiting from increased sales of his officially licensed jerseys was not enough for him to enjoy his newfound success.  He therefore decided to go in his own direction.

[3]     *Id.* citing https://www.gq.com/story/terry-rozier-tunnel-style ("How'd the Scary Terry thing come together?).

and ISlide USA (among others) to sell "Scary Terry" merchandise.  *RSUF* at ¶ 25.  Both the "Scary Terry" phenomenon and the associated clothing line were the subject of significant media attention during that NBA season.  *RSUF* at ¶ 26.  While Defendant avers that the "Scary Terry" clothing was not marketed as affiliated with <u>Scream</u> (*RSUF* at ¶ 37), that is not the case.  Indeed, many of the articles specifically identified "Scary Terry" as being associated with <u>Scream</u>, saying:

> "they needed something catchy, something that would pop, something that would, well, get some retweets … So Rozier's team developed a cartoon version of Rozier wearing a Jason mask from the Friday the 13th movies.  The problem is that Rozier's favorite horror movie is "Scream" … I feel like the scary movies nowadays is not like they used to be," Rozier said. "[The Scream mask] was just my favorite. Then people in Boston started doing the Scary Terry thing, so they started using the Jason mask and I'm like, 'Nah, we're using Scream.' "  TR. Ex. B

> "one might question the thinking behind aligning oneself with these guys, <u>Scream</u> us Rozier's favorite horror movie, and the guard has a tattoo of the movie's famous mask." TR Ex. D.

> "When you watch the Cavaliers take on the Celtics in Game One of the Eastern Conference Finals in Boston Sunday, you are likely to see fans, maybe even players on the bench, sporting 'Scary Terry' t-shirts.  It uses the name of a character on the Adult Swim animated TV series, 'Rick and Morty.'  And it's a caricature of Terry wearing a 'Scream' mask."  TR Ex. F.

> The 'Scream' mask is among [Rozier's] many tattoos and 'Scream' is his favorite horror flick." *Id*.

> "There's a 'Scary Terry' store with a variety of apparel choices … one where Terry is holding his 'Scream' mask and another where he's standing masked…" *Id*.
> "Rozier … sold more than 10,000 shorts with a cartoon [of himself] wearing a *Scream* mask [and] the legend of 'Scary Terry' was born.  TR. Ex. G.

> "Scary Terry was there the whole time.  But, much like Scream, you just didn't know— and by the time you did, it was already too late." *Id*.

> When asked how the 'Scary Terry thing came together, Defendant stated "I love scary movies [and] Scream is my favorite. The way he talks on the phone, talks stuff and all that. [Then] the season plays out, we play Indiana Pacers and I got that last steal and dunk. People started calling me Scary Terry around that time. I was in L.A. and one of the guys in my agency who does marketing sent me shirts. It had the Jason mask on there. And I was like, ***We need to get the Scream mask on there***." Then, around the time the playoffs, we started selling them out. *Id.* (emphasis added).

*RSUF* at ¶¶ 35-37.

While Defendant similarly avers that the "Scary Terry" clothing was not marketed as affiliated with, or authorized by, Easter Unlimited, it does not answer the question as to whether the public-at-large would make that association.  Further, it gives Plaintiff (and this Court) cause to question if the omission of any reference to Plaintiff was by design.[4]

Defendant received approximately $150.000 in gross sales revenue from the sale of the "Scary Terry" clothing.  *RSUF* at ¶ 40.  Plaintiff did not give Defendant a license to use Ghost Face® on any product and did not and does not authorize Defendant's use of Ghost Face®. *Declaration of Alan Geller* at ¶¶ 63, 64.  Defendant's "Scary Terry" products are substantially similar to products for which Plaintiff would require a license, to the extent that they utilize the entirety of Plaintiff's trademarked Ghost Face® image, and are of the type for which Plaintiff would have required a license insofar as Plaintiff licenses its Ghost Face® mask and/or image for use on wearing apparel.  *Id.* at ¶ 69.

## **ARGUMENT**

Defendant is not entitled to summary judgment for the simple reason that each and every one of his points of argument serve to <u>create</u> questions of fact, rather than eliminate them.  For example, Defendant's first point of argument alleges that Plaintiff purportedly does not own the copyright for which it holds two valid certificates of registration.  As will be discussed *infra*, Defendant offers no evidence to prove this alleged point—only conjecture.  To the extent that the

---

[4]      It belies credulity for Defendant to claim that he was unaware of Plaintiff's ownership of Ghost Face®, not only because he is an avid fan of <u>Scream</u>, but because he also boasts as having "dressed as the masked killer from <u>Scream</u>" for "most of his years growing up." *Declaration of Terry Rozier* at ¶ 9.  Indeed, at some point, one could logically assume that Defendant would have developed a similar affection for the designers of the Ghost Face® mask, having made such extensive use of it.

Court is to consider Defendant's argument on this point, and does not find it insufficient to overcome Plaintiff's proof, the only possible outcome would be for the Court to identify this as a question of fact requiring denial of Defendant's motion.

The same is true with respect to Defendant's second argument, that his appropriation of Plaintiff's intellectual property is purportedly a non-infringing "fair use" of same. Setting aside the fact that the determination of whether an allegedly infringing use is a "fair use" is almost inevitably a question of fact that cannot be resolved on summary judgment, Defendant's argument in this regard is entirely disingenuous. That is because has been repeatedly quoted as specifically wanting Scream (or, more aptly, Ghost Face®) to be the face of "Scary Terry." It is only when Defendant was faced with this lawsuit that he attempted to explain away his previously unequivocal statements.

Defendant is similarly not entitled to summary judgment on Plaintiff's trademark infringement claims, insofar as they would similarly require this Court to resolve disputed question of fact. In short sum, as was stated at the outset of this brief, Defendant's motion borders on the sanctionable by asking this Court to grant affirmative relief, when the arguments as structured do nothing more than create questions of fact.

## I.      STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact" and "the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Glatt v. Fox Searchlight Pictures, Inc*., 811 F.3d 528, 533 (2d Cir. 2016). A fact is material if it "might affect the outcome of the suit under the governing law," and a dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Baldwin v. EMI Feist Catalog, In*c., 805 F.3d 18, 25 (2d Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Stated otherwise, the Court must determine

whether the evidence can reasonably support a verdict in the moving party's favor. See *James v. New York Racing Ass'n*, 233 F.3d 149, 157 (2d Cir. 2000).

The moving party bears the initial burden of demonstrating that no genuine issue exists as to any material fact. *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing C*elotex Corp. v. Catrett*, 477 U.S. 317, 322-25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013). Once that burden has been met, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011).

In determining whether a genuine dispute as to a material fact exists, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (citing *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)). In so doing, the Court's job is not to "weigh the evidence or resolve issues of fact." *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 254 (2d Cir. 2002) (citation omitted). That is because "[a]ssessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citation omitted). Therefore, "summary judgment is improper if ***any*** evidence in the record from ***any*** source would enable a reasonable inference to be drawn in favor of the nonmoving party.*" Gym Door Repairs, Inc. v. Young Equip. Sales, Inc*., 331 F.Supp.3d 221, 231 (S.D.N.Y. 2018) (citing *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994)) (emphases added).

When the Court is presented with cross-motions for summary judgment, the same standards apply. "Each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Morales v.*

10

*Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001) (citing *Schwabenbauer v. Bd. of Educ.*, 667 F.2d 305, 314 (2d Cir. 1981)). Stated otherwise, "when both parties move for summary judgment, asserting the absence of any genuine issues of material fact, a court need not enter judgment for either party. Rather, each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Id*. at 121 (citations omitted).

When the Court examines Defendant's motion on its own proverbial legs—as it must—it should find that the motion must be denied insofar as each and every argument rests on the identification of questions of disputed fact.  It does not eliminate them.  For this reason, the Court would be justified in considering Defendant's prayer for affirmative relief on the arguments as made to be frivolous, if not sanctionable.

## II.    DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S COPYRIGHT INFRINGEMENT CLAIMS

In moving for summary judgment on Plaintiff's copyright infringement clams, Defendant advances two arguments.  First, Defendant claims that Plaintiff does not own the copyright for Ghost Face® because it is purportedly not the original author of the mask.  Second, Defendant argues that his intrusion onto Plaintiff's rights in Ghost Face® is not an infringement but, rather, is a permitted "fair" and non-infringing use.

Prior to addressing the reasons for which each of these arguments must fail, Plaintiff wishes to call the Court's attention to the duplicity of Defendant's argument.  More specifically, Defendant argues that his intention was to develop "his own brand," while downplaying the fact that he did so by appropriating his favorite horror movie character—that being Plaintiff's Ghost Face® mask—and capitalizing on the goodwill developed in the Ghost Face® mark by Plaintiff.

**A. Defendant's Challenge to Plaintiff's Copyright Ownership is
<u>Legally Deficient</u>**

Rule 26(a)(1) of the Federal Rules of Civil Procedure requires that "a party without awaiting a discovery request, provide to the other parties: (i) the name and, if known, the address and telephone number of each individual likely to have discoverable information--along with the subjects of that information--that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment…" Fed. R. Civ. Pro. 26(a)(1).  Similarly Rule 26(a)(2)(A) requires that a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R. Civ. Pro. 26(a)(2)(A).  An individual must be disclosed as an expert if his/her testimony requires "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 703(a).  Finally, Rule 37(c)(1) prevents a party who fails to disclose that information without substantial justification from using that evidence at trial, unless the failure to disclose is harmless. *EMI Music Mktg. v. Avatar Records, Inc.*, 334 F. Supp. 2d 442, 445 (S.D.N.Y. 2004)

Defendant's challenge to Plaintiff's claim of copyright ownership rests entirely on the Court accepting the Declaration of Tony Gardner, filed in connection with Defendant's motion. Defendant's reliance on the Gardner Declaration is misplaced for a variety of reasons.  First and foremost, as is set forth in the accompanying declaration of Craig B. Sanders, Gardner was not disclosed as a person with knowledge of the facts of this case in Defendant's Rule 26(a) disclosures, because no such disclosures were served.   As is further stated in the accompanying declaration of Craig B. Sanders, Defendant did not disclose Gardner as a person with information relevant to this case in any supplement or amendment to the Rule 26(a) disclosures, because there were also no supplements or amendments to the (nonexistent) disclosures.

In determining whether to preclude a party from offering testimony, the Court is to consider: "(1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the testimony of the precluded witness[es]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 297 (2d Cir. 2006) (internal quotation marks and citation omitted).  These factors cut heavily against Defendant since there is no legitimate explanation for his failure to comply with the Rule 26 disclosure requirements (and, to date, he has not offered one).

Since Gardner's claims of ownership have gone unasserted in any legal forum before this one—for nearly thirty (30) years--Defendant could not have found Gardner.  Instead, Gardner must have contacted Defendant at the onset of this case when it garnered some media attention. Accordingly, Defendant has purposefully concealed this witness in the proverbial brushes through the entirety of discovery.  This is precisely the type of conduct prohibited under the Federal and Local Rules.  As a result, the Court should strike the Gardner declaration, together with its exhibits, and decline to entertain same on the motion.

### B. Defendant's Challenge to Plaintiff's Copyright Ownership is Time Barred

In the event that the Court decides to consider the Gardner Declaration in connection with Defendant's motion —which Plaintiff avers it should not for the reasons stated *supra*— it should reject Gardner's arguments to a claim of authorship as being time-barred.  That is because a challenge to a claim of copyright ownership is subject to a three-year statute of limitations (17 U.S.C. § 507(b)) which statute begins to run from the date on which the allegedly aggrieved party knows or has reason to know of the injury upon which the claim is premised. *Merchant v. Levy*, 92 F.3d 51, 56 (2d Cir. 1996) (Because "[a] cause of action accrues when a plaintiff knows or has

reason to know of the injury upon which the claim is premised[,] ... plaintiffs claiming to be co-authors are time-barred three years after accrual of their claim from seeking a declaration of copyright co-ownership rights and any remedies that would flow from such a declaration."); *Margo v. Weiss,* No. 96 Civ. 3842(MBM), 1998 WL 2558, at *9 (S.D.N.Y. Jan. 5, 1998) (No cause of action, whether or not brought under the Copyright Act, may be premised on a time-barred challenge to a copyright); *Weber v. Geffen Records, Inc.*, 63 F. Supp. 2d 458, 464 (S.D.N.Y. 1999); see also *Santa–Rosa v. Combo Records,* 471 F.3d 224, 227 (1st Cir. 2006) (barring claim for declaration of copyright ownership brought more than 3 years after plaintiff should have expected payments); *cf. Dewan v. Blue Man Group Ltd. P'ship,* 73 F.Supp.2d 382, 387 (S.D.N.Y. 1999).

In this case, Gardner's declaration avers that it was purportedly his "wailer" mask--not Plaintiff's Ghost Face® mask—that was used in the <u>Scream</u> movies. Setting aside the fact that Gardner does not dispute that Dimension Film sought and was granted a license from Plaintiff to use Ghost Face® in <u>Scream</u>, and that the film's credits duly acknowledged as much, the claim Gardner seeks to assert herein is clearly time-barred. Indeed, Gardner's declaration states that he was aware of the fact that the mask he claims to be his was used in <u>Scream</u> but decided not to seek redress for any perceived intrusion because he "was too busy with original film products to worry about an industry [he'd] left." *Gardner Declaration* at ¶ 36.

At this juncture, Gardner is barred from coming forward to assert any purported rights on behalf of himself or Defendant, because any such claims are barred by either the applicable statute of limitations and/or by the doctrine of laches.

### C. Defendant's Challenge to Plaintiff's Copyright Ownership <u>Creates a Question of Fact Requiring Denial of the Motion</u>

In the event that the Court does not decline to consider the Gardner declaration on the grounds that Gardner was an undisclosed witness and/or because his purported challenge to

Plaintiff's valid copyright registrations is time-barred by at least twenty five (25) years, the Court still must find that Defendant is not entitled to summary judgment insofar as the Gardner declaration would only serve to create a question of fact that cannot be resolved in this context.

That is because "[r]egistering a copyright with the Copyright Office creates a rebuttable presumption that the copyright is valid." *Fonar Corp. v. Domenick,* 105 F.3d 99, 104 (2d Cir. 1997); *Lennon v. Seaman,* 84 F.Supp.2d 522, 525 (S.D.N.Y. 2000)). "Such certificate is *prima facie* evidence of a valid copyright." *Yurman Design Inc. v. Chaindom Enterprises, Inc*., No. 99 CIV. 9307 (JFK), 2003 WL 22047846, at *2 (S.D.N.Y. Aug. 29, 2003).

Here, Plaintiff has presented evidence of two valid registrations (*Dkt. No.* 14-1) as well as direct testimony of Plaintiff's owner averring ownership of Ghost Face®. Accordingly, pursuant to 17 U.S.C. 410(c), Plaintiff has presented *prima facie* evidence of a valid copyright. Defendant's (insufficient) challenge thereto, if accepted by this Court, only serves to create a question of fact that requires denial of Defendant's motion for summary judgment because "[t]he function of the district court in considering [a] motion for summary judgment is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Kaytor v. Elec. Boat Corp*., 609 F.3d 537, 545 (2d Cir. 2010) (citation omitted).

### III.  DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT ON HIS "FAIR USE" DEFENSE

Recognizing that his "ownership" defenses will fail (either on the merits or because they create questions of fact), Defendant next argues that his appropriation of Plaintiff's Ghost Face® mask is not an infringement of Plaintiff's rights, but is a purportedly "fair use" of Ghost Face®. As with the above, Defendant's arguments range from the ridiculous to the sublime.

Fair use is an affirmative defense to a claim of copyright infringement and, thus, the party claiming the defense carries the burden of proof as to all issues in dispute. *Campbell v. Acuff-Rose*

*Music*, Inc., 510 U.S. 569, 590, 114 S.Ct. 1164, 1177, 127 L.Ed. 2d 500 (1994). Fair use analysis must be conducted on a "case-by-case" basis, and the statutory factors may not "be treated in isolation," but must "[a]ll . . . be explored, and the results weighed together, in light of the purposes of copyright." *Campbell,* 510 U.S. at 577-78. In this regard, Congress has provided four (4) statutory criteria to be used in evaluating a fair use defense. *Stewart v. Abend*, 495 U.S. 207, 237 (1990).

Although the factors are nonexclusive, they are nonetheless regarded as the threshold inquiries for determining whether any given particular use was fair. The four factors to be considered in a fair use analysis are: (1) the purpose and character of the use; (2) the nature of the copyrighted work; (3) the substantiality of the portion used in relation to the copyrighted work as a whole; (4) the effect on the potential market for or value of the copyrighted work. 17 U.S.C. § 107; see also *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 560-61, 105 S.Ct. 2218, 2230-31, 85 L.Ed. 2d 588 (1985); *Campbell,* 510 U.S. at 577 ("Congress meant § 107 'to restate the present judicial doctrine of fair use, not to change, narrow, or enlarge it in any way' and intended that courts continue the common-law tradition of fair use adjudication. H.R.Rep. No. 94–1476, p. 66 (1976)."); *Estate of Smith v. Graham*, 799 F. App'x 36, 38 (2d Cir. 2020).

Critically, the analysis of the fair use doctrine "is not to be simplified with bright-line rules." *Authors Guild v. Google, Inc*., 804 F.3d 202, 213 (2d Cir. 2015). Instead, they "provide only general guidance about the sorts of copying that courts and Congress most commonly have found to be fair uses." *Id.* (alteration removed). This requires the Court to conduct a "case-by-case analysis," which is "not to be simplified with bright-line rules." *Id*. Continuing, the Court held that "[e]ach actor thus stands as part of a multifaceted assessment of the crucial question: how to define the boundary limit of the original author's exclusive rights in order to best serve the

16

overall objectives of the copyright law to expand public learning while protecting the incentives of authors to create for the public good."

When examining the four fair use factors, the Court must bear in mind that "the would-be fair user of another's work must have justification for the taking. A secondary author is not necessarily at liberty to make wholesale takings of the original author's expression merely because of how well the original author's expression would convey the secondary author's different message." *Id.* at 215.  Here, the Court should find that Defendant's appropriation of Plaintiff's duly registered intellectual property was for his own purpose and benefit, and was to specifically capitalize on his own perception of the appeal of Ghost Face® to the public at large.  This is not a permitted fair use.  The Court may also consider the question of how Defendant would view someone appropriating his likeness for use on any other project.  The fact that Defendant seeks to declare his intrusion on Plaintiff's rights to be "fair," while at the same time protecting his own brand, should give the Court cause for pause as to the veracity of Defendant's position (and/or the reasoning behind Defendant's advancement of said position in the context of this case).

### A. <u>The First Fair Use Factor – Purpose and Character of the Use - Does Not Favor Defendant</u>

The first fair use factor asks the Court to consider 'the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes.' The crux of the profit/nonprofit distinction is . . . whether the user stands to profit from exploitation of the copyrighted material without paying the customary price." *Harper & Row Publishers,* 471 U.S. at 562.  Here, Defendant's use of Plaintiff's registered marks and copyright was clearly for his own commercial gain, and would also be the kind of use for which Plaintiff would require a license.

Further to this point, the Supreme Court had stated in *Sony* that every commercial use is "presumptively" unfair. *Am. Geophysical Union v. Texaco Inc*., 60 F.3d 913, 921 (2d Cir. 1994) citing *Sony Corp. of America v. Universal City Studios*, 464 U.S. 417, 451, 104 S.Ct. 774, 792 & n. 31, 78 L.Ed.2d 574 (1984).  To avoid an overly broad application of this presumption, Courts now also ask whether a commercial use of an existing work is sufficiently "transformative," so as to negate the presumption that a secondary commercial use tends to weigh against a finding of fair use." *Id.* (citations and alterations omitted).  The concept of transformative use asks "whether the new work merely supersedes the objects of the original creation ... or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message; it asks, in other words, whether and to what extent the new work is transformative." *Campbell,* 510 U.S. at 578-79.

Applying those standards here, Defendant's use had no transformative effect because it displayed the Ghose Face® in the same manner and for the same purpose as it was originally intended to be used.  Recognizing this insurmountable quandary, Defendant attempts to argue that his use of Ghost Face® was purportedly transformative because it was allegedly intended to be a parody of Plaintiff's mark. It is not.

A parody is a comical imitation of another work with deliberate exaggeration for comic effect.  There is simply nothing in Defendant's usage that remotely approaches that of a parody, since that was not Defendant's intention.  To the contrary, Defendant's moving brief and supporting papers reveal that Defendant intended to use Ghost Face® "to invoke the Scream movie…" (Def. Mem. at p. 11) because he wanted to portray "Scary Terry" as a "killer" *Rozier Declaration* at ¶ 20; *RSUF* at ¶ 9. Indeed, Defendant's Rule 56.1 Statement repeatedly states that Scream is Defendant's favorite horror movie and he wanted "Scary Terry" to emulate that image.

18

Defendant's argument that "Scary Terry" is a cartoon and/or a parody for purposes of this motion should be rejected as a self-serving or disingenuous statement offered to extricate himself from liability only.   Indeed, were Defendant asked if he intended to portray himself as a comical buffoon, rather than the "killer" that sowed the seeds for the "Scary Terry" image to arise, he would surely say "no."

In light of the foregoing, the Court would be hard-pressed to find that the first fair use factor favors Defendant, insofar as Defendant's use of Ghost Face® was clearly for commercial purposes and was not transformative at all, because it does not "add anything new" to Plaintiff's work.

### B.   The Second Fair Use Factor – Nature of the Copyright Work - Does Not Favor Defendant

The second statutory factor focuses on "the nature of the copyrighted work" or "the value of the materials used," *Campbell*, 510 U.S. at 586.   This factor calls for recognition that some copyrighted works that are creative or fictional are closer to the core of copyright and, therefore, are less likely to be fairly used than works that are factual in nature. *Id*.   Two distinctions are relevant to this analysis: (1) "whether the work is expressive or creative, such as a work of fiction, or more factual, with a greater leeway being allowed to a claim of fair use where the work is factual or informational," and (2) "whether the work is published or unpublished, with the scope of fair use involving unpublished works being considerably narrower." *Id.* (quoting 2 Howard B. Abrams, *The Law of Copyright* § 15:52 (2006)).   Ghost Face® is a creative work and, as such, is at the "core" of copyright protection. *Lennon v. Premise Media Corp.*, 556 F. Supp. 2d 310, 325 (S.D.N.Y. 2008).

Defendant argues that this factor is "neutral" because his use was purportedly for purposes of parody.   Defendant's argument fails, however, as to the facts and the law. As to the facts,

because his motion repeatedly states that he wanted to portray "Scary Terry" as a "killer," which is exactly the image Ghost Face® is intended to portray, and the "Scary Terry" image is neither an exaggerated nor comical, Defendant's usage was not that of a parody.  As to the law, to the extent that the "nature" of the original copyrighted work necessarily combines with the "purpose and character" of the secondary work to permit assessment of whether the secondary work uses the original in a "transformative" manner, as the term is used in *Campbell,* and since Defendant's use was non-transformative but rather replicates the protected expression of the original, this factor favors Plaintiff.  *Authors Guild v. Google, Inc.*, 804 F.3d 202, 220 (2d Cir. 2015)

### C.  The Third Fair Use Factor - Amount and Substantiality of the Portion Used - Does not Favor Defendant

The third factor considers whether "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." *Campbell*, 510 U.S. at 586.  This factor "recognizes that the more of a copyrighted work that is taken, the less likely the use will be found to be fair, and that even a less substantial taking may be unfair if it captures the essence of the copyrighted work." *Infinity Broad. Corp.,* 150 F.3d 104, 109 (2d Cir. 1998). The determination of what qualifies as reasonable harks back to the first statutory factor insofar as "the extent of permissible copying varies with the purpose and character of the use." *Campbell*, 510 U.S. at 586–87.  While wholesale copying does not preclude fair use *per se*, copying an entire photograph militates against a finding of fair use.  *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 820 (9th Cir. 2003) (internal quotation marks omitted); see also *Balsley v. LFP, Inc.*, 691 F.3d 747, 760 (6th Cir. 2012)

Defendant incorrectly argues that this factor "weighs heavily in favor of fair use" which is clearly wrong.  That is because Defendant appropriated the entirety of Plaintiff's work—that being the Ghost Face® mask and shroud.  That is the entirety of Plaintiff's protected product.  The fact that Defendant placed the mask on his own body—as opposed to that of any other person—does

not change the portion of Plaintiff's property which Defendant appropriated.  A mask—by its nature—is meant to be worn.  That is exactly what "Scary Terry" does here, for the very purpose of portraying himself as a "killer," the natural association to be made with Ghost Face®.

### D.  The Fourth Fair Use Factor – Effect of the Use - Cannot be Determined on this Motion

The fourth fair use factor, "the effect of the [copying] use upon the potential market for or value of the copyrighted work," focuses on whether the copy brings to the marketplace a competing substitute for the original, or its derivative, so as to deprive the rights holder of significant revenues because of the likelihood that potential purchasers may opt to acquire the copy in preference to the original. Because copyright is a commercial doctrine whose objective is to stimulate creativity among potential authors by enabling them to earn money from their creations, the fourth factor is of great importance in making a fair use assessment. *Authors Guild v. Google, Inc.*, 804 F.3d 202, 223 (2d Cir. 2015); see also *Harper & Row,* 471 U.S. at 566, 105 S.Ct. 2218 (describing the fourth factor as "undoubtedly the single most important element of fair use").  The effect of the use upon the potential market for or value of the copyrighted work looks "to not only the market harm caused by the particular infringement, but … whether, if the challenged use becomes widespread, it will adversely affect the potential market for the copyrighted work." *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 613 (2d Cir. 2006); see also *Galvin v. Illinois Republican Party*, 130 F. Supp. 3d 1187, 1195 (N.D. Ill. 2015) ("[i]solated instances of minor infringements, when multiplied many times, become in the aggregate a major inroad on copyright that must be prevented.") (citing *Harper & Row*, 471 U.S. at 566–67, 105 S.Ct. 2218).

In other words, the question is not whether Defendant's illegal use of Ghost Face® impairs Plaintiff's ability to sell and/or license the image.  Instead, the question is whether permitting such a use across-the-board would have a negative impact on the marketplace as a whole for Plaintiff.

The answer to this question is undeniably "yes." Accordingly, while Defendant avers that this factor purportedly "weighs heavily in favor" of a finding of fair use, Defendant offers no proof on this point, other than his own *ipse dixit*. In contrast to the testimony offered by Defendant (or lack thereof), Plaintiff has stated that it licenses Ghost Face® for use on wearing apparel and other accessories. To the extent that Defendant's use would be considered "fair" on this point, it would render Plaintiff's copyrights and trademarks useless, as long as a putative infringer associated Ghost Face® with any other image. That is not what the copyright laws provide, and it is beyond peradventure that Defendant would not be pleased if his image were used by another for purely commercial purposes, without license or permission from Defendant.

## IV.   DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S TRADEMARK INFRINGEMENT CLAIMS

In moving for summary judgment on Plaintiff's trademark infringement claims, Defendant first argues that Plaintiff has purportedly failed to show that it has a valid mark in Ghost Face®. This argument is fatal to Defendant's motion for the same reason that the argument above is fatal to Defendant's copyright infringement claims. More specifically, if Defendant calls upon this Court to question whether Plaintiff holds the rights to the image of Ghost Face® (despite its submission of valid registrations for same), the question of ownership would be a question of fact which would mandate denial of Defendant's motion.

"[T]he fact that the USPTO accepted [a] mark for registration creates a presumption that the mark is valid." *American Ort, Inc. v. Israel,* No. 07 Civ. 2332(KMK), 2007 WL 2049733, at *4 (S.D.N.Y. July, 17, 2007). "[T]he fact of registration thus confers a procedural advantage on the registrant in an infringement action the opposing party must overcome the presumption that the purchasing public perceives the mark to be inherently distinctive. However, the statute does not state that the certificate of registration is itself evidence of how the public actually views the

mark ...." *Lane Capital Management, Inc. v. Lane Capital Management, Inc.,* 192 F.3d 337, 345 (2d Cir. 1999). Once a plaintiff shows that a trademark has a valid registration, the "burden of production therefore shifts to Defendant to proffer evidence that the mark is not valid, *i.e.,* that it is generic ...." *Lemme v. Nat'l Broad. Co., Inc.,* 472 F.Supp.2d 433, 443 (E.D.N.Y. 2007). However, after a mark has been used continuously for up to five years, the mark becomes incontestable and, in such cases, registration "shall be conclusive evidence ... of the registrant's exclusive right to use the registered mark in commerce." *Gruner + Jahr USA Pub. v. Meredith Corp.,* 991 F.2d 1072, 1076 (2d Cir. 1993); *see also, Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.,* 469 U.S. 189, 194–95, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985).

Further, marks are classified, in ascending order of strength, as "(1) generic; (2) descriptive; (3) suggestive; [or] (4) arbitrary *385 or fanciful." *TCPIP Holding Co. v. Haar Communications, Inc.,* 244 F.3d 88, 93 (2d Cir. 2001); *Star Industries, Inc. v. Bacardi & Co. Ltd.*, 412 F.3d 373, 384–85 (2d Cir. 2005). Suggestive marks and arbitrary or fanciful marks are each inherently distinctive. *Id.* Suggestive marks are those that are not directly descriptive, but do suggest a quality or qualities of the product, *id.,* through the use of "imagination, thought and perception," *Time, Inc. v. Petersen Publ'g Co.,* 173 F.3d 113, 118 (2d Cir. 1999) (quoting *Stix Prods., Inc. v. United Merchants and Mfrs., Inc.,* 295 F.Supp. 479, 488 (S.D.N.Y. 1968)). Arbitrary or fanciful marks are ones that do not communicate any information about the product either directly or by suggestion. *See generally Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4, 9–11 (2d Cir. 1976) (discussing scale of inherent distinctiveness); *Star Industries, Inc.*, 412 F.3d at 385.

Here, Plaintiff has two uncontested fanciful trademarks. Defendant has offered zero evidence to suggest that Plaintiff has abandoned its marks and/or that its marks have become

generic over the course of time.  Further, Defendant has failed to establish any of the eight-factor *Polaroid* balancing test introduced by Judge Friendly in *Polaroid Corp. v. Polarad Electronics Corp.,* 287 F.2d 492 (2d Cir. 1961). The analysis of these factors is not mechanical, but rather, focuses on the ultimate question of whether, looking at the products in their totality, consumers are likely to be confused. *See Nora Beverages, Inc. v. Perrier Group of Am., Inc.,* 269 F.3d 114, 119 (2d Cir. 2001). The eight factors are: (1) strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that the senior user may "bridge the gap" by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market. *Star Industries,* 412 F.3d at 384.

Here, without any evidence or analysis, Defendant simply states that Plaintiff purportedly cannot establish a claim of consumer confusion.  Looking at the factors, however, Defendant is undoubtedly incorrect.  As to the first factor, as noted *supra,* Plaintiff's mark is fanciful and therefore entitled to the highest strength and protection.  As to the second factor, Defendant's usage was not only similar but intentionally identical to Plaintiff's mark.  As to the third factor, Defendant used Plaintiff's mark for the sale of products (e.g. t-shirts) sold also by Plaintiff.  As to the fourth factor, Defendant's products are already in competitive proximity such that there is really no gap to bridge.  *Paddington Corp. v. Attiki Imps. & Dists., Inc.,* 996 F.2d 577, 586 (2d Cir. 1993).  As to the fifth factor, Defendant presents no evidence or consumer surveys establishing that there was not actual consumer confusion resulting from his infringing use.  *Merriam-Webster, Inc. v. Random H., Inc.*, 35 F.3d 65, 72 (2d Cir. 1994). As to the sixth factor, "[b]ad faith may be inferred from the junior user's actual or constructive knowledge of the senior user's mark." *Star Industries,*

24

412 F.3d at 389.  Here, based on Defendant's testimony that his express intention was to make use of the Ghost Face® mask from the movie Scream, the imitative mark was adopted in bad faith. As to the seventh factor, Defendant offers no evidence of the quality of the products he was selling leaving.  As to the eight factor, "consumer sophistication "consider[s] the general impression of the ordinary purchaser, buying under the normally prevalent conditions of the market and giving the attention such purchasers usually give in buying that class of goods."  *Id.*  Insofar as Defendant's moving papers very clearly state that Defendant's decision to use Ghost Face® as the persona for "Scary Terry" was expressly chosen to evoke the image of the killer from <u>Scream</u>. to the extent that <u>Scream</u> duly and properly credited Plaintiff for the rights in the Ghost Face® mask, Defendant cannot plausibly argue that there would be no claim of consumer confusion.

A further discussion of the *Polaroid* factors favoring Plaintiff appears in Plaintiff's separate moving brief and, rather than duplicating those arguments here, they are incorporated by reference.

## CONCLUSION

For all the reasons set forth herein, Defendant's motion for summary judgment must be denied, together with such other and further relief as this Court deems just, appropriate and proper.

Dated:  Garden City, New York
          August 21, 2020

                                   **BARSHAY SANDERS, PLLC**

                        By:      */s Jonathan M. Cader*
                                   Jonathan M. Cader, Esq.
                                   Craig B. Sanders, Esq.
                                   100 Garden City Plaza, Suite 500
                                   Garden City, New York 11530
                                   Tel: (516) 203-7600
                                   *Attorneys for Plaintiff*