**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

EASTER UNLIMITED, INC. d/b/a FUN WORLD,

                Plaintiff,

                -against-

TERRY ROZIER,

                Defendant.

Docket No: 2:18-cv-06637-RRM-ARL

**PLAINTIFF'S RESPONSE TO DEFENDANT'S**
**STATEMENT OF MATERIAL FACTS**

Plaintiff Easter Unlimited, Inc. d/b/a Fun World ("*Plaintiff*"), by and through its undersigned attorneys, hereby submits the following in response to the statement of Defendant Terry Rozier ("*Defendant*") Pursuant to Local Rule 56.1, and avers as follows:

**I.**     **Terry Rozier and the "Scary Terry" Persona**

1.     Terry Rozier is a professional basketball player, who currently plays for the Charlotte Hornets in the National Basketball Association ("NBA"). Decl. of Terry Rozier ("TR") ¶ 2.

> **Plaintiff's Response:** Objection. This is not a "material fact" within the meaning of Rule 56 and need not be responded to, insofar as Defendant's current employment is irrelevant to the question of whether Defendant infringed Plaintiff's copyright(s) and trademark(s) at the times alleged in the Complaint. *See, Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment").

> Subject to and without waving the foregoing objection, this fact is not disputed.

2.    Rozier started his NBA career with the Boston Celtics organization, which drafted him in the first round of the 2015 NBA draft. TR ¶¶ 12-13.

**Plaintiff's Response:**  Objection.  This is not a "material fact" within the meaning of Rule 56 and need not be responded to, insofar as Defendant's initial employment is irrelevant to the question of whether Defendant infringed Plaintiff's copyright(s) and trademark(s) at the times alleged in the Complaint. *See, Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment").

Subject to and without waving the foregoing objection, this fact is not disputed.

3.    Rozier's career as a professional basketball player first took off during his third season with the Celtics, when he experienced success on the court filling in for the Celtics' star point guard, Kyrie Irving. TR ¶ 13.

**Plaintiff's Response:**  Objection.  This is not a "material fact" within the meaning of Rule 56 and need not be responded to, insofar as the point at which Defendant's career purportedly "took off" is irrelevant to the question of whether Defendant infringed Plaintiff's copyright(s) and trademark(s) at the times alleged in the Complaint. *See, Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment").

Subject to and without waving the foregoing objection, this fact is not disputed.

4.    During that year, Rozier acquired a reputation with Celtics fans and around the league as a dangerous scorer and fearless shooter. TR ¶ 13.

**Plaintiff's Response:**  Objection.  This is not a "material fact" within the meaning of Rule 56 and need not be responded to, insofar as the point at which Defendant purportedly acquired his alleged reputation is irrelevant to the question of whether Defendant infringed Plaintiff's copyright(s) and trademark(s) at the times alleged in the Complaint. *See, Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)

("[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment").

Subject to and without waving the foregoing objection, this fact is not disputed.

5.      During that season, Celtics fans and members of the sports media began calling

Rozier "Scary Terry." TR ¶ 14 & Exs. A-G.

> **Plaintiff's Response:**  Objection.  This is not a "material fact" within the meaning of Rule 56 and need not be responded to, insofar as the point at which Celtics fans and members of the sports media gave Defendant a faceless nickname is irrelevant to the question of whether Defendant infringed Plaintiff's copyright(s) and trademark(s) at the times alleged in the Complaint. *See, Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment").
>
> Subject to and without waving the foregoing objection, this fact is not disputed

6.      The "Scary Terry" nickname was meant to invoke, in a humorous way, the fear

Rozier's explosive scoring outbursts supposedly instilled in Celtics' opponents. TR ¶ 18.

> **Plaintiff's Response**:  Disputed.   The cited portion of Defendant's declaration states "by accepting the nickname my fans gave me, I … wanted to engage with them, and use it to share some personal aspects of myself, like my love for scary movies" and that Defendant insisted "We need to get the Scream mask on there.[1]"

7.      Once the "Scary Terry" nickname took off, Rozier decided to make a line of t-shirts

and hoodies to celebrate the "Scary Terry" persona and to capitalize on his emerging celebrity. TR

¶ 19.

> **Plaintiff's Response**: It is not disputed that Defendant decided to capitalize on his emerging celebrity by selling a line of t-shirts and hoodies, but did so by misappropriating Plaintiff's intellectual property to be the face of "Scary Terry."

---

[1]      *Id.* citing https://www.gq.com/story/terry-rozier-tunnel-style ("How'd the Scary Terry thing come together?).

8.      Rozier and his management team decided that the clothing line would feature the name "Scary Terry," as well as a cartoon drawing of Rozier accompanied by a mask associated with a serial killer from popular horror. TR ¶ 20.

> **Plaintiff's Response**: Objection.  Defendant's description of "Scary Terry" as purportedly being a "cartoon" is irrelevant to the question of whether Defendant appropriated the entirety of Plaintiff's intellectual property for himself.
>
> Subject to and without waiving the foregoing objection, this statement is disputed. Defendant has been oft-quoted as saying "I love scary movies [and] Scream is my favorite. The way he talks on the phone, talks stuff and all that…  one of the guys in my agency who does marketing sent me shirts. It had the Jason mask on there. And I was like, "We need to get the Scream mask on there." Then, around the time the playoffs, we started selling them out.[2]"

9.      Rozier and his management team selected a serial killer mask for the "Scary Terry" clothing as a way to poke fun both at the "Scary Terry" persona and the common practice of referring to professional athletes—especially hot-shooting point guards—as remorseless "killers." TR ¶ 20.

> **Plaintiff's Response**: Objection.  Defendant's description of "Scary Terry" as purportedly being a "cartoon" is irrelevant to the question of whether Defendant appropriated the entirety of Plaintiff's intellectual property for himself.
>
> Subject to and without waiving the foregoing objection, this statement is disputed. Defendant has been oft-quoted as saying "I love scary movies [and] Scream is my favorite. The way he talks on the phone, talks stuff and all that…  one of the guys in my agency who does marketing sent me shirts. It had the Jason mask on there. And I was like, "We need to get the Scream mask on there." Then, around the time the playoffs, we started selling them out.[3]"

10.     Rozier and his management team wanted the image on the clothing—both of Rozier and the mask—to be like a child's cartoon, rather than something actually scary or sinister looking,

---

[2]    *Id.* citing https://www.gq.com/story/terry-rozier-tunnel-style ("How'd the Scary Terry thing come together?").
[3]    *Id.* citing https://www.gq.com/story/terry-rozier-tunnel-style ("How'd the Scary Terry thing come together?").

to underscore the humor implicit in the "Scary Terry" persona. TR ¶ 20.

> **Plaintiff's Response**: Objection. Defendant's description of "Scary Terry" as purportedly being a "cartoon" is irrelevant to the question of whether Defendant appropriated the entirety of Plaintiff's intellectual property for himself.
>
> Subject to and without waiving the foregoing objection, this statement is disputed. Defendant has been oft-quoted as saying "I love scary movies [and] Scream is my favorite. The way he talks on the phone, talks stuff and all that… one of the guys in my agency who does marketing sent me shirts. It had the Jason mask on there. And I was like, "We need to get the Scream mask on there." Then, around the time the playoffs, we started selling them out.[4]"

11.     Rozier and his team hired Glen Infante, a popular mural artist, to draw the cartoons for the clothing. TR ¶ 21.

> **Plaintiff's Response**:  Objection.  This is not a "material fact" within the meaning of Rule 56 and need not be responded to, insofar as the person whom Defendant purportedly chose to draw "Scary Terry" is irrelevant to the question of whether Defendant infringed Plaintiff's copyright(s) and trademark(s) at the times alleged in the Complaint. *See, Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment").
>
> Subject to and without waiving the foregoing objection, this fact is disputed insofar as Defendant has been oft-quoted as saying "I love scary movies [and] Scream is my favorite. The way he talks on the phone, talks stuff and all that… one of the guys in my agency who does marketing sent me shirts. It had the Jason mask on there. And I was like, "We need to get the Scream mask on there." Then, around the time the playoffs, we started selling them out.[5]"

12.     The original version of the cartoon depicted Rozier wearing a hockey mask like the Jason character in the Friday the 13th movies. TR ¶ 22.

> **Plaintiff's Response**: Objection.  Defendant's description of "Scary Terry" as purportedly being a "cartoon" is irrelevant to the question of whether Defendant appropriated the entirety of Plaintiff's intellectual property for himself.

---

[4]     *Id.* citing https://www.gq.com/story/terry-rozier-tunnel-style ("How'd the Scary Terry thing come together?").
[5]     *Id.* citing https://www.gq.com/story/terry-rozier-tunnel-style ("How'd the Scary Terry thing come together?").

Subject to and without waiving the foregoing objection, it is not disputed that the original depiction of "Scary Terry" was featured wearing a hockey mask like the Jason character in the Friday the 13th movies. However, Defendant rejected using the Jason character from the Friday the 13th movies as the face of "Scary Terry," repeatedly saying "We need to get the Scream mask on there."[6]

13.    Below is an image of the version of the "Scary Terry" cartoon referred to in the preceding Paragraph:



TR ¶ 28.

**Plaintiff's Response**: Objection. This is not a "material fact" within the meaning of Rule 56 and need not be responded to, insofar as the claims in this case do not involve Defendant's infringement of the intellectual property rights of any entity or person other than Plaintiff and, therefore, need not be responded to. *See, Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment").

Subject to and without waving the foregoing objection, this statement is disputed. The image featured above is picture which speaks for itself and any description thereof by Defendant is inadmissible hearsay. FRE 801, 802, 803.

---

[6]        *Id.* citing https://www.gq.com/story/terry-rozier-tunnel-style ("How'd the Scary Terry thing come together?").

14.    Rozier asked that a version of the cartoon also be done that invoked the mask from the movie Scream. TR ¶ 23.

**Plaintiff's Response**: Objection.  Defendant's description of "Scary Terry" as purportedly being a "cartoon" is irrelevant to the question of whether Defendant appropriated the entirety of Plaintiff's intellectual property for himself.

Subject to and without waiving the foregoing objection, it is not disputed that Defendant specifically insisted that Plaintiff's Ghost Face mask be used as the face of "Scary Terry," repeatedly saying "We need to get the Scream mask on there"[7]; See also TR. Ex. B ("Nah, we're using Scream").

15.    Rozier asked for a version of the Scream mask for sentimental reasons. TR ¶ 23.

**Plaintiff's Response**: Objection.  Defendant's purported motivation for insisting on using Plaintiff's Ghost Face mask be used as the face of "Scary Terry" is not a "material fact" within the meaning of Rule 56 and need not be responded to, insofar as the law does not require that Defendant intended to infringe Plaintiff's copyright. Therefore, this statements need not be responded to. *See, Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment").

Subject to and without waiving the foregoing objection, it is not disputed that Defendant specifically insisted that Plaintiff's Ghost Face mask be used as the face of "Scary Terry," repeatedly saying "We need to get the Scream mask on there"[8]; See also TR. Ex. B ("Nah, we're using Scream").

16.    Scream is one of Rozier's favorite movies and was very important to him growing up, where its mix of violence and humor provided solace and escapism in a childhood surrounded by violence. TR ¶¶ 6-9, 23.

**Plaintiff's Response**: Objection.  Defendant's purported motivation for insisting on using Plaintiff's Ghost Face mask be used as the face of "Scary Terry" is not a "material fact" within the meaning of Rule 56, insofar as the law does not require that Defendant intended to infringe Plaintiff's copyright. Therefore, this statements need not be responded to. *See,*

---

[7]    *Id.* citing https://www.gq.com/story/terry-rozier-tunnel-style ("How'd the Scary Terry thing come together?).
[8]    *Id.* citing https://www.gq.com/story/terry-rozier-tunnel-style ("How'd the Scary Terry thing come together?).

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment").

Subject to and without waiving the foregoing objection, it is not disputed that Defendant specifically insisted that Plaintiff's Ghost Face mask be used as the face of "Scary Terry," repeatedly saying "We need to get the Scream mask on there"[9]; See also TR. Ex. B ("Nah, we're using Scream").

17.    During the offseason immediately preceding the year in which Rozier acquired the "Scary Terry" nickname, Rozier memorialized his affection for the movie by getting a tattoo of the mask from the movie. TR ¶ 23.

**Plaintiff's Response**: Objection.  Defendant's getting a tattoo is not a "material fact" within the meaning of Rule 56 and need not be responded to.  *See, Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment").

Subject to and without waiving the foregoing objection, it is not disputed that Defendant has professed an affection for the movie Scream, and serves to illustrate Defendant's intent to misappropriate Plaintiff's intellectual property.

18.    Although the "Scary Terry" clothing featured multiple different cartoons, the specific one at issue in this lawsuit showed a cartoon image of Rozier in his Celtics uniform wearing a stylized version of the mask from Scream over the words "Scary Terry." TR ¶ 29.

**Plaintiff's Response**: Objection.  Defendant's description of "Scary Terry" as purportedly being a "cartoon" is irrelevant to the question of whether Defendant appropriated the entirety of Plaintiff's intellectual property for himself.

Subject to and without waiving the foregoing objection, it is disputed that Defendant's appropriation of Plaintiff's intellectual property was "a stylized version" of the mask from Scream.  Instead, it was a complete copy thereof.

19.    Below is a picture of Rozier wearing the version of the "Scary Terry" t-shirt at issue in this lawsuit, which Rozier posted to his Instagram account on February 15, 2018:

---

[9]        *Id.* citing https://www.gq.com/story/terry-rozier-tunnel-style ("How'd the Scary Terry thing come together?").



TR ¶ 29.

    **Plaintiff's Response**: Disputed.  The image featured above is picture which speaks for itself and any description thereof by Defendant is inadmissible hearsay. FRE 801, 802, 803.

    20.    Initially, Rozier and his team had around 500 "Scary Terry" shirts and hoodies made. TR ¶ 30.

    **Plaintiff's Response**: This statement is disputed to the extent that Defendant purports to draw a distinction between the "Scary Terry" image and Defendant's infringement of Plaintiff's intellectual property.  It is otherwise not disputed that Defendant purported to authorize the production of approximately 500 shirts and hoodies featuring Plaintiff's Ghost Face mask and/or image.

    21.    Rozier marketed that initial run of "Scary Terry" clothing through his social media accounts and a dedicated website. TR ¶ 30.

    **Plaintiff's Response**: This statement is disputed to the extent that Defendant purports to draw a distinction between the "Scary Terry" image and Defendant's infringement of Plaintiff's intellectual property.  It is otherwise not disputed that Defendant purported to authorize the marketing of shirts, hoodies and other clothing featuring Plaintiff's Ghost

Face mask and/or image.

22.    During that season's playoffs, Rozier helped lead the Celtics on a surprise run to the Eastern Conference Finals while filling in for an injured Kyrie Irving. TR ¶ 31.

> **Plaintiff's Response**: Objection.  Defendant's purported role in helping the Celtics advancement to the Eastern Conference Finals is not a "material fact" within the meaning of Rule 56 and need not be responded to. *See, Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment").

23.    Rozier's role in the Celtics' surprise playoff run led to a surge in popularity for the "Scary Terry" persona. TR ¶ 31.

> **Plaintiff's Response**:  It is not disputed that Defendant sought to capitalize on his newfound fame (TR ¶ 32), but did so at the expense of Plaintiff, by appropriating Plaintiff's intellectual property for himself.

24.    To capitalize on that surge in popularity, Rozier and his team had more "Scary Terry" apparel made. TR ¶ 32.

> **Plaintiff's Response**:  It is not disputed that Defendant sought to capitalize on his newfound fame (TR ¶ 32), but did so at the expense of Plaintiff, by appropriating Plaintiff's intellectual property for himself.

25.    Rozier and his team also authorized Barstool Sports, I Love Boston Sports, and ISlide USA to sell the "Scary Terry" merchandise. TR ¶ 32.

> **Plaintiff's Response**:    It is not disputed that Defendant purported to authorize Barstool Sports, I Love Boston Sports, and ISlide USA to sell merchandise featuring the "Scary Terry" image, but did so without license or authorization from Plaintiff.  *See Declaration of Alan Geller in Opposition to Defendant's motion for summary judgment* at ¶ 41.

26.    Both the "Scary Terry" phenomenon and the associated clothing line were the subject of significant media attention during that NBA season. TR ¶ 33-34 & Exs. A-G.

> **Plaintiff's Response**: Objection.  Plaintiff does not understand Defendant's use of the word "significant" in this context.  Subject to and without waiving the foregoing objection, it is not disputed that Defendant sought to capitalize on his newfound fame (TR ¶ 32).  It is further not disputed that Defendant has annexed six (6) articles to his Declaration (the first of which refers to Defendant as a "Masshole") (TR ¶ 33), but that such articles are documents which speak for themselves, and Defendant's description and/or characterization of same is inadmissible hearsay.  FRE 801, 802, 803.

27.    For instance, an article published by the national sports website SB Nation in May 2018 stated that the Celtics' playoff run "made Rozier a folk hero in Boston, where Scary Terry shirts have become ubiquitous around the [Boston] Garden. Rozier has embraced his following." TR ¶ 33 & Ex. A.

> **Plaintiff's Response**:  Disputed.  The article cited is a document which speaks for itself, and Defendant's description and/or characterization of same is inadmissible hearsay. FRE 801, 802, 803.

28.    In March 2018, the Boston Globe published an article entitled "Here's how 'Scary Terry' Rozier came to be a thing" that connected the "Scary Terry" apparel to "Rozier's camp" having witnessed the "hype escalating around a new moniker, 'Scary Terry.'" TR Ex. B.

> **Plaintiff's Response**:  Disputed.  The article cited is a document which speaks for itself, and Defendant's description and/or characterization of same is inadmissible hearsay. FRE 801, 802, 803.

29.    In May 2018, the popular website The Ringer published an article entitled "Heeeere's Scary Terry!" that included a photo of Rozier with his "Scary Terry" shirt, and stated: "The shirts' message is hard to miss: You may not have known who Scary Terry was before, but

if you've been paying attention to the injury-riddled Celtics in the playoffs to date, you do now." TR Ex. D.

> **Plaintiff's Response**: Disputed. The article cited is a document which speaks for itself, and Defendant's description and/or characterization of same is inadmissible hearsay. FRE 801, 802, 803.

30.    In May 2018, shortly before the Celtics were scheduled to face the Cleveland Cavaliers in the Eastern Conference Finals that year, cleveland.com published an article entitled "Who created 'Scary Terry' Rozier persona for Boston Celtics guard? It's a Cleveland story" that informed Cavaliers fans that "[w]hen you watch the Cavaliers take on the Celtics in Game One of the Eastern Conference Finals in Boston Sunday, you are likely to see fans, maybe even players on the bench, sporting 'Scary Terry' T-shirts." TR Ex. F.

> **Plaintiff's Response**: Disputed. The article cited is a document which speaks for itself, and Defendant's description and/or characterization of same is inadmissible hearsay. FRE 801, 802, 803.

31.    After the season, GQ published a lengthy profile of Rozier that began with the following: "In the summer of 2017, Boston Celtics guard Terry Rozier got a tattoo of the Scream mask. Back then, he wasn't yet Scary Terry, the NBA's unexpected killer. He was just Kyrie Irving's promising young backup, who had started exactly zero NBA games. Then, last season happened: Irving got hurt, Rozier stepped on to fill an All-NBA-sized void, tore through the NBA playoffs . . ., helped get the Celtics one w[in] from winning an Eastern Conference their injury-addled team had no business winning, and sold more than 10,000 shirts with a cartoon Terry Rozier in a Scream mask. The legend of 'Scary Terry' was born." TR Ex. G.

> **Plaintiff's Response**: Disputed. The article cited is a document which speaks for itself, and Defendant's description and/or characterization of same is inadmissible hearsay.

FRE 801, 802, 803.

32.    While each of the media reports discussed above mentioned the Scream mask and the movie's importance to Rozier personally in discussing the "Scary Terry" clothing, they all linked the clothing specifically to Rozier's emerging celebrity and the "Scary Terry" phenomenon. TR Exs. A-G.

> **Plaintiff's Response**:  Disputed.  The article cited is a document which speaks for itself, and Defendant's description and/or characterization of same is inadmissible hearsay. FRE 801, 802, 803.

33.    None of the media reports discussed above stated that the "Scary Terry" clothing was affiliated with the movie Scream. TR Exs. A-G.

> **Plaintiff's Response**:  Disputed.  The article cited is a document which speaks for itself, and Defendant's description and/or characterization of same is inadmissible hearsay. FRE 801, 802, 803.

34.    In addition, none of the media reports discussed above mentioned Easter Unlimited, Inc. d/b/a Fun World ("Easter Unlimited"), or stated that the "Scary Clothing" was affiliated with, or authorized by, Easter Unlimited. TR Exs. A-G.

> **Plaintiff's Response**:  Disputed.  The article cited is a document which speaks for itself, and Defendant's description and/or characterization of same is inadmissible hearsay. FRE 801, 802, 803.

35.    The marketing for the "Scary Terry" clothing emphasized that the clothing was affiliated with Rozier and the "Scary Terry" brand. TR ¶¶ 35-37.

> **Plaintiff's Response**: Disputed.  The articles cited by Defendant for his self-promotion as "Scary Terry" make repeated references to <u>Scream</u>, saying:

"they needed something catchy, something that would pop, something that would, well, get some retweets ... So Rozier's team developed a cartoon version of Rozier wearing a Jason mask from the Friday the 13th movies. The problem is that Rozier's favorite horror movie is "Scream" ... I feel like the scary movies nowadays is not like they used to be," Rozier said. "[The Scream mask] was just my favorite. Then people in Boston started doing the Scary Terry thing, so they started using the Jason mask and I'm like, 'Nah, we're using Scream.' " TR. Ex. B

"one might question the thinking behind aligning oneself with these guys, Scream us Rozier's favorite horror movie, and the guard has a tattoo of the movie's famous mask." TR Ex. D.

"When you watch the Cavaliers take on the Celtics in Game One of the Eastern Conference Finals in Boston Sunday, you are likely to see fans, maybe even players on the bench, sporting 'Scary Terry' t-shirts. It uses the name of a character on the Adult Swim animated TV series, 'Rick and Morty.' And it's a caricature of Terry wearing a 'Scream' mask." TR Ex. F.

The 'Scream' mask is among [Rozier's] many tattoos and 'Scream' is his favorite horror flick." *Id.*

"There's a 'Scary Terry' store with a variety of apparel choices ... one where Terry is holding his 'Scream' mask and another where he's standing masked…" *Id.*
"Rozier … sold more than 10,000 shorts with a cartoon [of himself] wearing a *Scream* mask [and] the legend of 'Scary Terry' was born. TR. Ex. G.

"Scary Terry was there the whole time. But, much like Scream, you just didn't know— and by the time you did, it was already too late." *Id.*

When asked how the 'Scary Terry thing came together, Defendant stated "I love scary movies [and] Scream is my favorite. The way he talks on the phone, talks stuff and all that. [Then] the season plays out, we play Indiana Pacers and I got that last steal and dunk. People started calling me Scary Terry around that time. I was in L.A. and one of the guys in my agency who does marketing sent me shirts. It had the Jason mask on there. And I was like, "***We need to get the Scream mask on there***." Then, around the time the playoffs, we started selling them out. *Id.* (emphasis added).

36.     The "Scary Terry" clothing was marketed specifically as Rozier merchandize primarily to Rozier's social media followers. TR ¶¶ 29-30, 35.

**Plaintiff's Response**: Disputed. The articles cited by Defendant for his self-promotion as "Scary Terry" make repeated references to Scream, saying:

"they needed something catchy, something that would pop, something that would, well, get some retweets … So Rozier's team developed a cartoon version of Rozier wearing a Jason mask from the Friday the 13th movies.  The problem is that Rozier's favorite horror movie is "Scream" … I feel like the scary movies nowadays is not like they used to be," Rozier said. "[The Scream mask] was just my favorite. Then people in Boston started doing the Scary Terry thing, so they started using the Jason mask and I'm like, 'Nah, we're using Scream.' "  TR. Ex. B

"one might question the thinking behind aligning oneself with these guys, <u>Scream</u> us Rozier's favorite horror movie, and the guard has a tattoo of the movie's famous mask."  TR Ex. D.

"When you watch the Cavaliers take on the Celtics in Game One of the Eastern Conference Finals in Boston Sunday, you are likely to see fans, maybe even players on the bench, sporting 'Scary Terry' t-shirts.  It uses the name of a character on the Adult Swim animated TV series, 'Rick and Morty.'  And it's a caricature of Terry wearing a 'Scream' mask."  TR Ex. F.

The 'Scream' mask is among [Rozier's] many tattoos and 'Scream' is his favorite horror flick." *Id.*

"There's a 'Scary Terry' store with a variety of apparel choices … one where Terry is holding his 'Scream' mask and another where he's standing masked…"  *Id.*
"Rozier … sold more than 10,000 shorts with a cartoon [of himself] wearing a *Scream* mask [and] the legend of 'Scary Terry' was born.  TR. Ex. G.

"Scary Terry was there the whole time.  But, much like Scream, you just didn't know—and by the time you did, it was already too late."  *Id.*

When asked how the 'Scary Terry thing came together, Defendant stated "I love scary movies [and] Scream is my favorite. The way he talks on the phone, talks stuff and all that. [Then] the season plays out, we play Indiana Pacers and I got that last steal and dunk. People started calling me Scary Terry around that time. I was in L.A. and one of the guys in my agency who does marketing sent me shirts. It had the Jason mask on there. And I was like, "***We need to get the Scream mask on there***." Then, around the time the playoffs, we started selling them out. *Id.* (emphasis added).


37.    The "Scary Terry" clothing was not marketed as affiliated with Scream. TR ¶ 36.

**<u>Plaintiff's Response</u>**: Disputed.  The articles cited by Defendant for his self-promotion as "Scary Terry" make repeated references to <u>Scream</u>, saying:

"they needed something catchy, something that would pop, something that would, well,

get some retweets … So Rozier's team developed a cartoon version of Rozier wearing a Jason mask from the Friday the 13th movies.  The problem is that Rozier's favorite horror movie is "Scream" … I feel like the scary movies nowadays is not like they used to be," Rozier said. "[The Scream mask] was just my favorite. Then people in Boston started doing the Scary Terry thing, so they started using the Jason mask and I'm like, 'Nah, we're using Scream.' "  TR. Ex. B

"one might question the thinking behind aligning oneself with these guys, <u>Scream</u> us Rozier's favorite horror movie, and the guard has a tattoo of the movie's famous mask." TR Ex. D.

"When you watch the Cavaliers take on the Celtics in Game One of the Eastern Conference Finals in Boston Sunday, you are likely to see fans, maybe even players on the bench, sporting 'Scary Terry' t-shirts.  It uses the name of a character on the Adult Swim animated TV series, 'Rick and Morty.'  And it's a caricature of Terry wearing a 'Scream' mask."  TR Ex. F.

The 'Scream' mask is among [Rozier's] many tattoos and 'Scream' is his favorite horror flick." *Id*.

"There's a 'Scary Terry' store with a variety of apparel choices … one where Terry is holding his 'Scream' mask and another where he's standing masked…"  *Id.*
"Rozier … sold more than 10,000 shorts with a cartoon [of himself] wearing a *Scream* mask [and] the legend of 'Scary Terry' was born.  TR. Ex. G.

"Scary Terry was there the whole time.  But, much like Scream, you just didn't know— and by the time you did, it was already too late."  *Id*.

When asked how the 'Scary Terry thing came together, Defendant stated "I love scary movies [and] Scream is my favorite. The way he talks on the phone, talks stuff and all that. [Then] the season plays out, we play Indiana Pacers and I got that last steal and dunk. People started calling me Scary Terry around that time. I was in L.A. and one of the guys in my agency who does marketing sent me shirts. It had the Jason mask on there. And I was like, ***We need to get the Scream mask on there***." Then, around the time the playoffs, we started selling them out. *Id.* (emphasis added).


38.    The "Scary Terry" clothing was not marketed as affiliated with, or authorized by,

Easter Unlimited. TR ¶ 37.

**<u>Plaintiff's Response</u>**:  It is not disputed that Defendant did not obtain a license from Plaintiff to use its intellectual property and failed or otherwise refused to acknowledge that "Scary Terry" would not exist, but for Plaintiff's unknowing contribution to same.

39.     Neither Rozier, nor anyone on his marketing team, had heard of Easter Unlimited prior to Rozier's receipt of a cease-and-desist letter from that company before the filing of this lawsuit. TR ¶ 37.

> **Plaintiff's Response**: Objection. Defendant's purported lack of awareness of Plaintiff is not a "material fact" within the meaning of Rule 56 and need not be responded to. *See, Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment").

40.     In all, Rozier received approximately $150.000 in gross sales revenue from the sale of the "Scary Terry" clothing. TR ¶ 40.

> **Plaintiff's Response**: It is not disputed that Defendant profited from his theft of Plaintiff's intellectual property.

## II.     Easter Unlimited and the "Ghost Face" Mask

41.     Easter Unlimited is a New York business that "designs, manufactures and markets products for Halloween" and other holidays. Am. Compl. (ECF No. 13) ¶ 13.

> **Plaintiff's Response**:  Partially disputed.  Since its formation, Plaintiff has been a designer, manufacturer and supplier of original costumes and masks, holiday items and novelty gifts, and designs, manufactures and markets products for Halloween, Easter, Valentine's, St. Patrick's, Christmas and patriotic occasions.  *Declaration of Alan Geller in Opposition to Defendant's Motion for Summary Judgment* at ¶¶ 3-4.

42.     Easter Unlimited's products principally consist of "costumes, masks, holiday items and novelty gifts." Id. ¶ 14.

> **Plaintiff's Response**:  Disputed.  The cited paragraph reads as follows: "G." *Am. Compl.* (ECF No. 13) ¶ 14; see also *Declaration of Alan Geller in Opposition to Defendant's Motion for Summary Judgment* at ¶ 5.

43.     The product Easter Unlimited sells that is most relevant to this lawsuit is the so-called "Ghost Face" mask, which was used in the movie Scream. Id. ¶¶ 18-22 & Ex. 1.

**Plaintiff's Response**:  Disputed.  Plaintiff's property at issue in this lawsuit is the Ghost Face® image and mask, for which trademarks were obtained in 2002, 2011 and 2012; as well as the Ghost Face mask, for which copyright registration was granted in 1993 and 1999.  *Declaration of Alan Geller in Opposition to Defendant's Motion for Summary Judgment* at ¶¶ 11-16.

44.     Easter Unlimited licensed that mask for use in Scream. Id. ¶ 20.

**Plaintiff's Response**:  Partially disputed.  In or about 1996, Plaintiff licensed its Ghost Face® mask to Dimension films for use in <u>Scream</u> and, subsequently, for six additional motion pictures, including the <u>Scream</u> sequels, <u>Scary Movie</u>, and <u>Jay and Silent Bob Strike Back</u>.  *Declaration of Alan Geller in Opposition to Defendant's Motion for Summary Judgment* at ¶ 21.

45.     The fame and popularity of the "Ghost Face" mask is a function of its appearance in Scream. Id. ¶ 22.

**Plaintiff's Response**: Objection.  Plaintiff does not understand what is meant by the statement that the fame and popularity of Ghost Face® is a "function" of its appearance in <u>Scream</u>.  Subject to and without waiving said objection, this statement is disputed. Although Ghost Face® became widely popularized as a result of it being featured in the <u>Scream</u> movies, because Plaintiff has aggressively policed its intellectual property rights and marketing of its products, in the twenty four years since the release of the initial movie, Ghost Face® is known throughout the world known by its trademark as being property owned by Plaintiff.  *Declaration of Alan Geller in Opposition to Defendant's Motion for Summary Judgment* at ¶ 24.

46.     Easter Unlimited contends that it "is the original designer of the Ghost Face Mask." Id. ¶ 18.

**Plaintiff's Response**:  Disputed.  Plaintiff is the original designer of Ghost Face®. *Declaration of Alan Geller in Opposition to Defendant's Motion for Summary Judgment* at ¶¶ 43-50.

47.     Easter Unlimited claims a copyright in the "Ghost Face" mask. Id. ¶ 23 & Ex. 2.

**Plaintiff's Response**:  Disputed.  Plaintiff is the holder of two valid copyright registrations for Ghost Face®.  *Declaration of Alan Geller in Opposition to Defendant's Motion for Summary Judgment* at ¶¶ 12-13; *Dkt. No.* 14-1.

48.     Easter Unlimited's copyright registration for the mask states that the mask was first "published" on December 4, 1991. Id. Ex. 2.

**Plaintiff's Response**: Disputed.  Plaintiff's valid and enforceable copyright registrations are documents which speak for themselves and are the "best evidence" of their content. FRE 1002.

49.     Easter Unlimited's copyright registration for the mask also states that the work being copyrighted is a "sculpture." Id. Ex. 2.

**Plaintiff's Response**: Disputed.  Plaintiff's valid and enforceable copyright registrations are documents which speak for themselves and are the "best evidence" of their content. FRE 1002.

50.     Easter Unlimited claims trademark rights to the word mark "Ghost Face." Id. ¶ 25.

**Plaintiff's Response**:  Disputed.  Plaintiff is the holder of valid and enforceable trademark registrations for Ghost Face®, which were granted in 2002, 2011 and 2012.  *Declaration of Alan Geller in Opposition to Defendant's Motion for Summary Judgment* at ¶¶ 13-16; *Dkt. No.* 14-2.

51.     Easter Unlimited claims trademark rights in a "design mark" consisting of an image of a figure wearing the mask while holding a knife over the words "Ghost Face." Id. ¶ 26 & Ex. 3.

**Plaintiff's Response**: Disputed.  Plaintiff's valid and enforceable trademark registrations are documents which speak for themselves and are the "best evidence" of their content. FRE 1002.

52.    The design mark referenced in the preceding paragraph was registered on December 11, 2012. Id. Ex. 3.

**Plaintiff's Response**:  Disputed.  Plaintiff's valid and enforceable trademark registration is a document which speaks for itself and is the "best evidence" of its content.  FRE 1002.

53.    In this lawsuit, Easter Unlimited is not claiming any trademark rights in the product configuration of the "Ghost Face" mask itself. See generally id. ¶¶ 24-26.

**Plaintiff's Response**:  Disputed.  Plaintiff does not understand what is meant by the allegation that it is purportedly not claiming any trademark rights in the "product configuration" of the Ghost Face® mask itself.  Instead, the Amended Complaint is a document which speaks for itself, and Plaintiff asserts claims therein for all infringements of its trademark rights.

**III. Tony Gardner, Alterian, and the Actual Creator of the "Ghost Face" Mask.**

54.    Tony Gardner is the CEO of Alterian Studios, Inc. ("Alterian"), a visual-effects studio known for creating original masks, makeup, and visual effects for horror films and other productions. Decl. of Tony Gardner ("TG") ¶ 1.

**Plaintiff's Response**: Objection. Tony Gardner is an undisclosed witness to the extent that Defendant failed to serve any Rule 26(a) disclosures and, to the extent it purports to have done so, did not supplement such disclosures to identify Gardner.  *See, generally, Declaration of Craig B. Sanders*.  Therefore, any statements offered on behalf of this unidentified witness are inadmissible and need not be responded to.

Subject to and without waiving the foregoing objection, Gardner's purported association with Alterian Studios is not a "material fact" within the meaning of Rule 56 and need not be responded to. *See, Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment").

55.     Gardner has been a mask, makeup and visual-effects artist in Hollywood for nearly 40 years. TG ¶ 4.

> **Plaintiff's Response**: Objection. Tony Gardner is an undisclosed witness to the extent that Defendant failed to serve any Rule 26(a) disclosures and, to the extent it purports to have done so, did not supplement such disclosures to identify Gardner. *See, generally, Declaration of Craig B. Sanders*. Therefore, any statements offered on behalf of this unidentified witness are inadmissible and need not be responded to.

> Subject to and without waiving the foregoing objection, Gardner's purported occupation as a mask, makeup and visual-effects artist in Hollywood is not a "material fact" within the meaning of Rule 56 and need not be responded to. *See, Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment").

56.     Among his many accomplishments, Gardner created zombie masks for Michael Jackson's Thriller, the unkempt Cousin It from The Addams Family, the villain in Sam Raimi's cult classic Army of Darkness, and the hordes of zombies in the Zombieland movies. TG ¶ 5.

> **Plaintiff's Response**: Objection. Tony Gardner is an undisclosed witness to the extent that Defendant failed to serve any Rule 26(a) disclosures and, to the extent it purports to have done so, did not supplement such disclosures to identify Gardner. *See, generally, Declaration of Craig B. Sanders*. Therefore, any statements offered on behalf of this unidentified witness are inadmissible and need not be responded to.

> Subject to and without waiving the foregoing objection, Gardner's purported work on unrelated projects is not a "material fact" within the meaning of Rule 56 and need not be responded to. *See, Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment").

57.     Gardner founded Alterian thirty years ago with two collaborators. TG ¶ 6.

> **Plaintiff's Response**:

> Objection. Tony Gardner is an undisclosed witness to the extent that Defendant failed to serve any Rule 26(a) disclosures and, to the extent it purports to have done so, did not supplement such disclosures to identify Gardner. *See, generally, Declaration of Craig B.*

*Sanders*. Therefore, any statements offered on behalf of this unidentified witness are inadmissible and need not be responded to.

Subject to and without waiving the foregoing objection, Gardner's purported founding of Alterian is not a "material fact" within the meaning of Rule 56 and need not be responded to. *See, Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment").

58. Today, Alterian and its artists are responsible for some of the most recognizable masks, monsters, and horror images in film. TG ¶ 7.

**Plaintiff's Response**: Objection. Tony Gardner is an undisclosed witness to the extent that Defendant failed to serve any Rule 26(a) disclosures and, to the extent it purports to have done so, did not supplement such disclosures to identify Gardner. *See, generally, Declaration of Craig B. Sanders*. Therefore, any statements offered on behalf of this unidentified witness are inadmissible and need not be responded to.

Plaintiff further objects to this statement on the grounds that it cannot determine if Gardner's testimony in this regard is being offered as expert opinion. If so, Defendant failed to identify Gardner as an expert witness at any time during discovery in this proceeding. *See Declaration of Craig B. Sanders* at ¶ 12.

Subject to and without waiving the foregoing objections, the contention that Alterian's current reputation as purportedly being responsible for some of the most recognizable masks, monsters, and horror images in film is not a "material fact" within the meaning of Rule 56 and need not be responded to. *See, Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment").

59. Alterian has been the subject of many books, articles, and horror-film anthologies that recognize our role in shaping the genre's iconography. TG ¶ 7.

**Plaintiff's Response**: Objection. Tony Gardner is an undisclosed witness to the extent that Defendant failed to serve any Rule 26(a) disclosures and, to the extent it purports to have done so, did not supplement such disclosures to identify Gardner. *See, generally, Declaration of Craig B. Sanders*. Therefore, any statements offered on behalf of this unidentified witness are inadmissible and need not be responded to.

Plaintiff further objects to this statement on the grounds that it cannot determine if Gardner's testimony in this regard is being offered as expert opinion. If so, Defendant failed to identify Gardner as an expert witness at any time during discovery in this proceeding. *See Declaration of Craig B. Sanders* at ¶ 12. Therefore, any statements offered on behalf of this unidentified witness are inadmissible and need not be responded to.

Subject to and without waiving the foregoing objections, that Alterian may have been the subject of unspecified books, articles, and/or horror-film anthologies is not a "material fact" within the meaning of Rule 56 and need not be responded to. *See, Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment").

60.     In Alterian's second year, Gardner and his Alterian colleagues decided that Alterian would launch a Halloween-mask business. TG ¶ 15.

**Plaintiff's Response**: Objection. Tony Gardner is an undisclosed witness to the extent that Defendant failed to serve any Rule 26(a) disclosures and, to the extent it purports to have done so, did not supplement such disclosures to identify Gardner. *See, generally, Declaration of Craig B. Sanders*. Therefore, any statements offered on behalf of this unidentified witness are inadmissible and need not be responded to.

Subject to and without waiving the foregoing objection, that Alterian purportedly decided to launch a Halloween-mask business is not a "material fact" within the meaning of Rule 56 and need not be responded to. *See, Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment").

61.     The decision by Gardner and his Alterian colleagues to start creating and selling masks was inspired by a costume that Alterian artist Loren Getthins made for Halloween in 1990, which included a ghost mask inspired in part by the Edvard Munch painting The Scream. TG ¶¶ 12-15.

**Plaintiff's Response**: Objection. Tony Gardner is an undisclosed witness to the extent that Defendant failed to serve any Rule 26(a) disclosures and, to the extent it purports to have

done so, did not supplement such disclosures to identify Gardner.  *See, generally, Declaration of Craig B. Sanders*. Therefore, any statements offered on behalf of this unidentified witness are inadmissible and need not be responded to.

Subject to and without waiving the foregoing objection, Alterian's purported inspiration for launching a Halloween-mask business is not a "material fact" within the meaning of Rule 56 and need not be responded to. *See, Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment").

62.    By 1990, Alterian had created six original Halloween ghost masks. TG ¶ 17.

**Plaintiff's Response**: Objection. Tony Gardner is an undisclosed witness to the extent that Defendant failed to serve any Rule 26(a) disclosures and, to the extent it purports to have done so, did not supplement such disclosures to identify Gardner.  *See, generally, Declaration of Craig B. Sanders*.  Therefore, any statements offered on behalf of this unidentified witness are inadmissible and need not be responded to.

Plaintiff further objects to this statement on the grounds that it cannot determine if Gardner's testimony in this regard is being offered as expert opinion.  If so, Defendant failed to identify Gardner as an expert witness at any time during discovery in this proceeding.  *See Declaration of Craig B. Sanders* at ¶ 12.

Moreover, this is not a "material fact" within the meaning of Rule 56 and need not be responded to. *See, Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment").

Subject to, and without waiving the foregoing objection, this statement is disputed. According to Gardner, Alterian did not sell complete costumes.  TG at ¶ 21.  Instead, its products were "DIY 'Ghost Maker' costume kits," allowing the purchaser to cut, color and create his or her own individual costume from the basic kit.  *Id.*

63.    Here is an image from early 1991 of Alterian's "Wailer" mask:



TG ¶ 21 & Ex. D.

> **Plaintiff's Response**: Objection. Tony Gardner is an undisclosed witness to the extent that Defendant failed to serve any Rule 26(a) disclosures and, to the extent it purports to have done so, did not supplement such disclosures to identify Gardner. *See, generally, Declaration of Craig B. Sanders*. Therefore, any statements offered on behalf of this unidentified witness are inadmissible and need not be responded to.
>
> Subject to and without waiving the foregoing objection, this is not a statement of fact, but is merely an observation. Subject to and without waving the foregoing objection, the above image is not Alterian's Wailer "mask." Instead, the image is merely a suggestion of how a purchaser could configure the uncut, vacuform plastic mask that was a part of Alterian's "ghost-maker" kit, which was not a complete costume. Alterian left it to the consumer as to what material would be affixed to the uncut, vacuform plastic mask, and how it should be colored, cut and/or configured. TG ¶ 21.

64.    Starting in 1991, Alterian began showing its masks at the major national costume trade shows. TG ¶ ¶ 22-23.

> **Plaintiff's Response**: Objection. Tony Gardner is an undisclosed witness to the extent that Defendant failed to serve any Rule 26(a) disclosures and, to the extent it purports to have done so, did not supplement such disclosures to identify Gardner. *See, generally, Declaration of Craig B. Sanders*. Therefore, any statements offered on behalf of this unidentified witness are inadmissible and need not be responded to.
>
> Plaintiff further objects to this statement on the grounds that Defendant does not identify the dates and/or locations of what it describes as being "the major national costume trade shows." Absent such information, Plaintiff is unable to respond to this statement.
>
> . Subject to and without waiving the foregoing objections, this is not a "material fact" within the meaning of Rule 56 and need not be responded to. *See, Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment").

65.    Between 1991 and 1994, Alterian went to as many trade shows as it could, and every major show. TG ¶ 24.

> **Plaintiff's Response**: Objection. Tony Gardner is an undisclosed witness to the extent that Defendant failed to serve any Rule 26(a) disclosures and, to the extent it purports to have done so, did not supplement such disclosures to identify Gardner. *See, generally, Declaration of Craig B. Sanders*. Therefore, any statements offered on behalf of this unidentified witness are inadmissible and need not be responded to.
>
> Plaintiff further objects to this statement on the grounds that Defendant does not identify the dates and/or locations of what it describes as being the subject "trade shows" or every "major show." Absent such information, Plaintiff is unable to respond to this statement.
>
> Subject to and without waiving the foregoing objections, this is not a "material fact" within the meaning of Rule 56 and need not be responded to. *See, Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment").

66.     Between 1991 and 1993, the biggest national expositions were run and sponsored by three main companies, of which Easter Unlimited was one. TG ¶¶ 26-27.

**Plaintiff's Response**: Objection. Tony Gardner is an undisclosed witness to the extent that Defendant failed to serve any Rule 26(a) disclosures and, to the extent it purports to have done so, did not supplement such disclosures to identify Gardner.  *See, generally, Declaration of Craig B. Sanders*.  Therefore, any statements offered on behalf of this unidentified witness are inadmissible and need not be responded to.

Plaintiff further objects to this statement on the grounds that the statement fails to identify what Defendant considers to have been the "biggest national expositions" between 1991 and 1993.  Plaintiff further does not understand what Defendant means by the allegation that Plaintiff was purportedly "one of the main sponsors" of the unidentified expositions.

Absent such information, Plaintiff is unable to respond to this statement. *See Declaration of Alan Geller in Opposition to Defendant's Motion for Summary Judgment* at ¶ .53

67.     Easter Unlimited had employees at each national trade show Alterian attended, including at least one it attended in 1991. TG ¶ 27.

**Plaintiff's Response**: Objection. Tony Gardner is an undisclosed witness to the extent that Defendant failed to serve any Rule 26(a) disclosures and, to the extent it purports to have done so, did not supplement such disclosures to identify Gardner *See, generally, Declaration of Craig B. Sanders*.  Therefore, any statements offered on behalf of this unidentified witness are inadmissible and need not be responded to.

Plaintiff further objects to this statement on the grounds that the statement fails to identify which trade shows Alterian purportedly attended in 1991 and/or which show Plaintiff purportedly attended.

Absent such information, Plaintiff is unable to respond to this statement. *See Declaration of Alan Geller in Opposition to Defendant's Motion for Summary Judgment* at ¶¶ 54-56.

68.     By its second year in business, Alterian had sold 1,412 ghost masks, which was its most popular product category, accounting for 44% of orders. TG ¶ 31.

**Plaintiff's Response**: Objection. Tony Gardner is an undisclosed witness to the extent that Defendant failed to serve any Rule 26(a) disclosures and, to the extent it purports to have

done so, did not supplement such disclosures to identify Gardner. *See, generally, Declaration of Craig B. Sanders*. Therefore, any statements offered on behalf of this unidentified witness are inadmissible and need not be responded to.

Subject to and without waiving the foregoing objection, this is not a "material fact" within the meaning of Rule 56 and need not be responded to. *See, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)* ("[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment").

69.     In 1994, Alterian left the mask business because its work for movies was taking off. TG ¶ 32.

**Plaintiff's Response**: Objection. Tony Gardner is an undisclosed witness to the extent that Defendant failed to serve any Rule 26(a) disclosures and, to the extent it purports to have done so, did not supplement such disclosures to identify Gardner. *See, generally, Declaration of Craig B. Sanders*. Therefore, any statements offered on behalf of this unidentified witness are inadmissible and need not be responded to.

. Subject to and without waiving the foregoing objection, this is not a "material fact" within the meaning of Rule 56 and need not be responded to. *See, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)* ("[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment").

70.     In 1996, Alterian's "Wailer" mask appeared in Scream. TG ¶ 33.

**Plaintiff's Response**: Objection. Tony Gardner is an undisclosed witness to the extent that Defendant failed to serve any Rule 26(a) disclosures and, to the extent it purports to have done so, did not supplement such disclosures to identify Gardner *See, generally, Declaration of Craig B. Sanders*. Therefore, any statements offered on behalf of this unidentified witness are inadmissible and need not be responded to.

Subject to and without waiving the foregoing objection, this statement is disputed. The mask appearing as the face of the killer in Scream was (and is) the property of Plaintiff and was licensed by Plaintiff to Dimension films. *Declaration of Alan Geller* at ¶ 19.

71.     According to the documentary that the film's creator, Wes Craven, made about the making of Scream, he found the mask in an abandoned house in California. TG ¶ 34.

**Plaintiff's Response**: Objection. Tony Gardner is an undisclosed witness to the extent that Defendant failed to serve any Rule 26(a) disclosures and, to the extent it purports to have done so, did not supplement such disclosures to identify Gardner. *See, generally, Declaration of Craig B. Sanders*. Therefore, any statements offered on behalf of this unidentified witness are inadmissible and need not be responded to.

Subject to and without waiving the foregoing objection, this statement is disputed insofar as TG's testimony concerning statements purportedly made by Wes Craven is inadmissible hearsay. FRE 801, 802, 803.

72.     In the documentary, Mr. Craven stated that his production team spent months trying to find the company that made the mask, and finally reached Easter Unlimited's CEO in New York, who claimed ownership of it. TG ¶ 35.

**Plaintiff's Response**: Objection. Tony Gardner is an undisclosed witness to the extent that Defendant failed to serve any Rule 26(a) disclosures and, to the extent it purports to have done so, did not supplement such disclosures to identify Gardner. *See Declaration of Craig B. Sanders* at ¶ . Therefore, any statements offered on behalf of this unidentified witness are inadmissible and need not be responded to.

Subject to and without waiving the foregoing objection, this statement is disputed insofar as TG's testimony concerning statements purportedly made by Wes Craven is inadmissible hearsay. FRE 801, 802, 803

73.     Gardner has consistently maintained, including in public statements, that Alterian invented the mask Easter Unlimited now claims as its own. TG ¶¶ 36-37.

**Plaintiff's Response**: Objection. Tony Gardner is an undisclosed witness to the extent that Defendant failed to serve any Rule 26(a) disclosures and, to the extent it purports to have done so, did not supplement such disclosures to identify Gardner. *See Declaration of Craig B. Sanders* at ¶ . Therefore, any statements offered on behalf of this unidentified witness are inadmissible and need not be responded to.

Subject to and without waiving the foregoing objection, this statement is disputed insofar as it is not supported by citation to admissible evidence. Instead, Gardner's reference to other statements he has purportedly made is inadmissible hearsay. FRE 801, 802, 803. Further, Gardner states that he has never taken any action against Plaintiff to protect his purported interest in (or rights to) Ghost Face® (TG ¶ 36), and the time for him to assert any such rights passed at least twenty seven (27) years ago.

74.    Gardner's Alterian's colleagues have also consistently maintained, including in public statements, that Alterian invented the mask Easter Unlimited now claims as its own. TG ¶ 38.

> **Plaintiff's Response**: Objection. Tony Gardner is an undisclosed witness to the extent that Defendant failed to serve any Rule 26(a) disclosures and, to the extent it purports to have done so, did not supplement such disclosures to identify Gardner. *See Declaration of Craig B. Sanders* at ¶ . Therefore, any statements offered on behalf of this unidentified witness are inadmissible and need not be responded to.
>
> Subject to and without waiving the foregoing objection, this statement is disputed insofar as it is not supported by citation to admissible evidence. Instead, Gardner's reference to statements made by others than himself is inadmissible hearsay. FRE 801, 802, 803. Further, Gardner states that he has never taken any action against Plaintiff to protect his purported interest in (or rights to) Ghost Face® (TG ¶ 36), and the time for him to assert any such rights passed at least twenty seven (27) years ago.

75.    Easter Unlimited never responded to or contradicted any of these statements about Alterian's creation of the mask. TG ¶ 39.

> **Plaintiff's Response**: Objection. Plaintiff's purported failure to respond to social media posts made by persons who do not claim any legally protected right in Ghost Face® is not a "material fact" within the meaning of Rule 56 and need not be responded to. *See, Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment").

## IV. This Lawsuit

76.    Easter Unlimited filed its lawsuit against Rozier on November 20, 2018. Compl. (ECF No. 1).

> **Plaintiff's Response**: Objection. This is not a statement of fact but, rather, is an observation of the docket in this case and therefore need not be responded to. *See, Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment").

Subject to and without waiving the foregoing objection, not disputed.

77.     On March 14, 2019, Easter Unlimited amended its complaint to assert claims against Barstool Sports, Inc.. Am. Compl. (ECF No. 13).

> **Plaintiff's Response**: Objection. This is not a statement of fact but, rather, is an observation of the docket in this case and therefore need not be responded to. *See, Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment").

> Subject to and without waiving the foregoing objection, not disputed.

78.     Barstool Sports Inc. was later dismissed from the lawsuit. Stipulation (ECF No. 28).

> **Plaintiff's Response**: Objection. This is not a statement of fact but, rather, is an observation of the docket in this case and therefore need not be responded to. *See, Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment").

> Subject to and without waiving the foregoing objection, not disputed.

79.     In this lawsuit, Easter Unlimited contends that Rozier violated its copyrights and trademarks relating to the "Ghost Face" mask when he distributed the "Scary Terry" merchandise. Am. Compl. (ECF No. 13) ¶¶ 13-58.

> **Plaintiff's Response**: Disputed. The Amended Complaint is a document which speaks for itself and is the best evidence of its content (FRE 1002) and Defendant's purported characterization thereof is inadmissible hearsay.

80.     Easter Unlimited is asserting claims for direct, contributory, and vicarious

copyright infringement (Counts 1-3), for trademark infringement (Count 4), for trademark counterfeiting (Count 5), and for trademark dilution by blurring (Count 6). Id. ¶¶ 59-101.

> **Plaintiff's Response**: Disputed. The Amended Complaint is a document which speaks for itself and is the best evidence of its content (FRE 1002) and Defendant's purported characterization thereof is inadmissible hearsay.

81.    During discovery in this case, Easter Unlimited did not offer any documents relating to its purported authorship of the "Ghost Face" mask. Decl. of Patrick Kabat ("PK") ¶ 4 & Ex. A at Resp. to Requests for Production Nos. 2-3, 5-6, 8, 15, 49-50, 54.

> **Plaintiff's Response**: Disputed. Exhibit "A" to the PK Declaration is not Plaintiff's responses to Defendant's Request for Production and does not annex the extensive production of documents produced by Plaintiff in this case. Further, Defendant ignores the status report filed by Plaintiff (following Defendant's refusal to submit a joint report) which explained that Plaintiff had amended and/or qualified certain responses to discovery in response to Defendant's objections. *Dkt. No.* 39.

82.    During discovery in this case, Easter Unlimited declined to respond to an interrogatory requesting the factual basis for its contention "that 'Plaintiff is the original designer of the Ghost Face Mask.'" PK Ex. A at Resp. to Interr. No. 1.

> **Plaintiff's Response**: Disputed. Plaintiff amended its responses to Interrogatory Nos. 1 and 3 to describe the basis for its contention that Plaintiff is the original designer of the Ghost Face® Mask. PK Ex. A at Resp. to Interr. Nos. 1, 3.

83.    During discovery in this case, Easter Unlimited did not produce any documents relating to its purported use of the "design mark" consisting of an image of a figure wearing the "Ghost Face" mask while holding a knife over the words "Ghost Face" to denote Easter Unlimited's brand. PK ¶ 5 & Ex. A at Resp. to Requests for Production 26-27.

**Plaintiff's Response**: Disputed.  Plaintiff objected to Defendant's Requests for Production 26-27 on the grounds that the requests as drafted potentially called for the production of every document that conceivably was involved in the usage of the Word and/or Design Mark from the beginning of time to date and, therefore, were so broad and unlimited as to time and scope that such is harassing, oppressive, so as to be an unwarranted annoyance. Defendant did not modify or revise its demand, despite Plaintiff's request to do so.

This statement is further disputed that the USPTO would not have granted Plaintiff trademark registration without proof of use in commerce.


BARSHAY SANDERS, PLLC

Dated: August 21, 2020

   /s  Jonathan M. Cader
Jonathan M. Cader, Esquire
100 Garden City Plaza, Fifth Floor
Garden City, New York 11530
Telephone: (516) 203-7600
jcader@BarshaySanders.com
*Attorneys for Plaintiff*